**EAST MISSISSIPPI ELECTRIC POWER ASSOCIATION, et al., Plaintiffs,**

**v.**

**PORCELAIN PRODUCTS COMPANY (INC.), et al., Defendants.**

**Civ. A. No. E88–0028(L).**

United States District Court, S.D. Mississippi, E.D.

Dec. 13, 1990.

James N. Compton, Reilly Morse, Compton, Crowell & Hewitt, Biloxi, for plaintiffs.

Kenneth Watts, Eppes, Watts & Shannon, Meridian, Miss., for Porcelain Products Co. & Tally.

David Williams, Stephen L. McAlilly, Williams, Glover, Walton & McAlilly, Meridian, Miss., for Ideal Basic Industries, Inc.

Robert R. Weller, James A. Klenkar, Barry L. Springel, Wm. Walden Jacobs, Richard Joseph Bedell, Jr. and Jeffrey D. Ubersax, Jones, Day Reavis & Pogue, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Holnam Inc. (hereinafter Ideal)[1] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Alternatively, Ideal seeks partial summary judgment on a variety of claims asserted against it in this litigation. Plaintiffs and defendant/cross-plaintiffs

---

1. After commencement of this litigation, Ideal Basic Industries, Inc., originally named as a defendant and cross-defendant, was merged with Holnam Inc.

Knox Porcelain Corporation (Knox) and Porcelain Products Company (Inc.) (Porcelain) have responded to Ideal's motion and the court has considered the memoranda of authorities together with attachments submitted by the parties. The court concludes that Ideal's motion should be granted in part and denied in part.

Plaintiffs, electric power associations in Mississippi,[2] brought this product liability action asserting claims of negligence, strict liability and breach of express and implied warranties in connection with model 2027–S porcelain insulators which plaintiffs had purchased from Knox/Porcelain from 1978 through 1985 and installed throughout their distribution systems. Plaintiffs charged that replacement of the insulators had become necessary after a substantial number of the model 2027–S insulators failed. The allegedly defective insulators were made of two pieces of non-conductive porcelain joined together with a cement paste. Plaintiffs named as defendants the manufacturers of the insulators, Knox and its parent company, Porcelain, and also named as a defendant Ideal, the manufacturer of the cement paste used in the manufacture of the insulators. By memorandum opinion and order of January 10, 1990, this court granted partial summary judgment dismissing plaintiffs' strict liability and negligence claims on the ground that recovery under those theories could not be had for purely economic loss. *See East Mississippi Electric Power Ass'n v. Porcelain Products Co., (Inc.)*, 729 F.Supp. 512 (S.D.Miss.1990). Plaintiffs were, therefore, left to proceed on their claims of breach of express and implied warranty.

Knox/Porcelain filed a cross-claim against Ideal asserting claims for negligence and breach of express and implied warranties and seeking indemnity or contribution, contending that any defects in plaintiffs' 2027–S insulators were caused by high-alkali cement that Ideal supplied in the years 1978 through 1983. It is the position of Knox/Porcelain that the insulators cracked because of a reaction between excessive alkalis in Ideal's cement and silica in the porcelain; the product of this alkali-silica reaction resulted in the formation of a gel which absorbed water and expanded, creating tremendous forces inside the insulators, causing them to crack.

According to Knox/Porcelain, for approximately thirty years prior to 1978, Ideal had supplied a low-alkali cement for use in the manufacture of 2027–S insulators. However, in 1978, without prior notification to Knox/Porcelain, Ideal began providing cement with an unacceptably high alkali level. Knox/Porcelain allege that Ideal was negligent in failing to disclose that the alkali content of the cement had increased such that there existed a possibility of expansion due to alkalis in the cement. They also allege that Ideal breached an express warranty that the alkali content of the cement did not exceed .55%, breached an implied warranty of fitness for a particular purpose by providing cement with an alkali content exceeding that which was acceptable for Knox/Porcelain's use in the manufacture of insulators, and breached an implied warranty that the cement was merchantable. Ideal seeks summary judgment as to each of these claims or, alternatively, requests dismissal of such of the claims as to which the court finds summary judgment to be appropriate. Additionally, it claims that the statute of limitations bars all claims for damages occurring more than six years prior to the filing of plaintiffs' complaint and Knox/Porcelain's cross-claim.

*Applicable Law*

Because this diversity action was brought in Mississippi, Mississippi's conflicts of laws rules dictate which state's law will govern the cross-claims against Ideal. The parties appear to agree that application of Mississippi's conflicts principles would require that Tennessee substan-

**2.** Plaintiffs are East Mississippi Electric Power Association, Dixie Electric Power Association, North Central Mississippi Electric Power Association, Pearl River Valley Electric Power Association, Singing River Electric Power Association, Southern Pine Electric Power Association, Tallahatchie Valley Electric Power Association, Yazoo Valley Electric Power Association, Coast Electric Power Association and Central Electric Power Association.

tive law govern all issues related to the Knox/Porcelain cross-claim against Ideal. The court is in agreement with their conclusion. Tennessee is the state in which Knox was incorporated and in which Ideal operated its cement plant. It is where the parties conducted their business dealings, and specifically, it is where the parties entered into contracts for the sale of cement, and where the cement was sold and delivered and the insulators were manufactured. Mississippi, in contrast, has no relationship to these parties, both nonresidents, and accordingly has no overriding interest in the outcome of the cross-claims against Ideal. Tennessee, therefore, is the center of gravity of the relationship between the parties to the cross-claim. *See Mitchell v. Craft*, 211 So.2d 509 (Miss.1968) (adopting center of gravity conflicts approach); *see also* Restatement on Conflict of Laws §§ 6, 145 and 188 (adopted by Mississippi courts for conflicts determination in tort and contract actions).[3]

*Negligence*

■ Ideal urges that Knox/Porcelain are precluded from recovery against Ideal under any theory of negligence and that their claim based on negligence should therefore be dismissed. According to Ideal, any such claim is barred by the economic-loss rule which previously provided the basis of this court's dismissal of plaintiffs' negligence claim against defendants. *See East Mississippi Elec. Power Ass'n*, 729 F.Supp. 512. Ideal reasons that because plaintiffs' negligence claim against Knox/Porcelain has been dismissed, there no longer exists any basis for Knox/Porcelain's negligence-based indemnity claim against Ideal. Additionally, it argues that any loss suffered by Knox/Porcelain in having to respond to a judgment in favor of plaintiffs will be pure-

ly economic because such a loss does not involve any personal injury or damage to their property and is thus barred by the economic-loss rule. Knox/Porcelain argue in response that the economic-loss rule simply has no application to their cross-claims for indemnity or contribution which, by their very nature, seek to recover economic losses and which are most often based in tort. In the court's opinion, their argument effectively overlooks or ignores the fact that by application of the economic-loss rule, the court has precluded plaintiffs from proceeding against them on tort theories. That is, plaintiffs can recover from neither defendant on tort-based claims because plaintiffs' losses have been purely economic. It would indeed be anomalous to permit recovery in tort on an indemnity/contribution basis where the primary claimants, the plaintiffs, are denied such recovery.

The economic-loss rule has developed as a matter of policy, of risk allocation between parties in the commercial setting by reference to the law of warranty when the product fails to perform as expected but causes only economic injury. As this court recognized in its prior opinion in which it determined that the economic-loss rule was applicable to plaintiffs' tort claims,

The distinction the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. *The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products.* He can appropriately be held liable for physical injuries caused by defects by requiring

**3.** Knox/Porcelain urge that Mississippi's commercial code, which prohibits disclaimer of implied warranties, *see* Miss.Code Ann. § 75–2–719(4) (1972), should be held applicable because the sales of the insulators to plaintiffs bear a reasonable relation to Mississippi, *see* Miss.Code Ann. § 75–1–105 (1972) (Mississippi law governs rights and duties of parties regarding disclaimers of implied warranties); *Price v. International Tel. & Tel. Corp.*, 651 F.Supp. 706 (S.D.Miss.1986) (section 75–1–105 authorizes ap-

plication of Mississippi substantive law on disclaimers and limitations of remedies in warranty action only when transaction bears some reasonable and appropriate relation to Mississippi). In this case, the sales which Knox/Porcelain urge bear a reasonable relation to Mississippi were from Knox/Porcelain to the *plaintiffs*. All transactions between the parties to the cross-claim occurred in Tennessee and thus bore no relation to Mississippi. Knox/Porcelain's argument is, therefore, without merit.

. his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm.... *A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that ·the product will not match his economic expectations unless the manufacturer agrees that it will.*

*East Mississippi Elec. Power Ass'n,* 729 F.Supp. at 515 (emphasis supplied) (quoting *Seely v. White Motor Co.,* 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965)); *see also Corporate Air Fleet of Tenn., Inc. v. Air Gates Learjet, Inc.,* 589 F.Supp. 1076 (M.D. Tenn.1984) (Tennessee law does not permit recovery in tort for purely economic loss); *Hailey v. Schulz,* Prod.Liab.Rptr. (CCH) 8575 (Tenn.Ct.App.1979) (quoting same passage from *Seely* ). These policy considerations are no less applicable in the context of a claim for indemnity. Indeed, in *Hailey,* the Tennessee Court of Appeals held that an indemnity action against a product manufacturer could not be maintained because the party asserting entitlement to indemnity sought to recover purely economic loss. The court explicitly stated that

strict liability in tort is not a proper vehicle for the recovery of economic losses. Appellant Schulz has suffered neither physical injury nor injury to his property.... *His only injury is the economic/commercial loss of having to satisfy the judgment in favor of plaintiffs Hailey.*

In summary, therefore, the court concludes that for the same reasons that Knox/Porcelain can have no liability to plaintiffs under tort theories for their loss, i.e., their loss is solely economic, Ideal can have no liability to Knox/Porcelain under negligence theories for their solely economic loss.[4]

Knox/Porcelain argue that even if the economic loss doctrine did have some application to claims for indemnity or contribution, it would not apply to an indemnity claim based on section 552(D) of the *Restatement (Second) of Torts,* which has been adopted by the Tennessee courts. That section provides as follows:

One engaged in the business of selling chattels who, by advertising, labels or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for pecuniary loss caused to another by his purchase of the chattel in justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

In *Ford Motor Company v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1986), the court, construing section 552(D), held a manufacturer of a defective product liable for misrepresentations or omissions resulting in a buyer's commercial loss, when the buyer relied on the manufacturer in making the purchase. In that case, the plaintiff had read Ford's sales literature and, when the truck did not perform as described, sued Ford. *See also First Nat'l Bank of Louisville v. Brooks Farms,* App. No. 89–194–II, 1990 WL 6386 (Tenn.Ct.App. January 31, 1990) (reiterating *Lonon's* approval of Section 552(D)). Knox/Porcelain argue that this principle provides a basis of recovery for their economic loss here because Ideal failed to disclose a number of material facts concerning the alkali content of the cement. While the court considers that this position would likely prove unsuccess-

---

**4.** The cases relied on by Knox/Porcelain in support of their contention that a negligence recovery is permitted in this instance because their claim for recovery is based in contribution or indemnity provide little guidance, for in none of those cases had the plaintiffs been denied a tort recovery. *See, e.g., Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336 (Tenn.1985) (manufacturer could recover indemnity for attorney's fees and expenses incurred in defending claims of negligence in connection with train derail-

ment); *Morris v. American Motors Corp.,* 142 Vt. 566, 459 A.2d 968 (1982) (where verdict returned on plaintiff's negligence theory relative to allegedly defective automobile, indemnity would be permitted against component manufacturer for negligence); *Duckworth v. Ford Motor Co.,* 320 F.2d 130 (3d Cir.1963) (Pa.law) (automobile manufacturer found liable for neligence in causing plaintiff's personal injuries could have contribution from dealer for negligence in failing to make proper repairs).

ful, the court need not determine whether there might be merit in Knox/Porcelain's position regarding the legal viability of a claim for negligent misrepresentation under Section 552(D) in the circumstances of this case, for Knox/Porcelain has not raised such a claim in its pleadings in this case.

*Express Warranty*

■ Knox/Porcelain have alleged that Ideal expressly warranted its cement to be low in alkali content and by providing a cement with an unacceptably high alkali content, Ideal breached that express warranty. Their express warranty claim is predicated on the following statement contained in a letter written on July 14, 1949 to Knox Porcelain Corporation by Walter S. Ernst, who was the chief chemist for Ideal (then Volunteer Portland Cement Company): "The alkali, calculated to soduim equivalent, is less than 0.55%." They contend that by this statement, Ideal specifically warranted that its cement was low in alkali content and proper for use in Knox/Porcelain's insulators. The court is of the opinion that this claim must fail for lack of sufficient evidence that the statement concerning the alkali content was a basis of the parties' bargain.

Tenn.Code Ann. § 47–2–313 provides that affirmations of fact or the description of goods may create express warranties by the seller, so long as they are a part of the basis of the parties' bargain. In the case *sub judice,* while there may be evidence that this letter was sent to Knox/Porcelain, there is no proof that anyone at Knox/Porcelain received or read the letter; in fact, it appears from the evidence presented that no one at Knox/Porcelain was even aware of the existence of this letter until after this litigation commenced. Moreover, there has been presented no evidence that the statement was of even the slightest significance to Knox/Porcelain's decision to purchase cement from Ideal. That is, there is in the court's opinion insufficient evidence from which it could reasonably be inferred that the information contained in the letter concerning alkali content provided a basis for the sales contracts entered into between Knox/Porcelain and Ideal.[5] Accordingly, Knox/Porcelain's claim for breach of express warranty must fail.

*Implied Warranty of Merchantability*

■ In Tennessee, implied warranties of merchantability arise by law unless excluded or modified. Goods are merchantable when they:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Tenn Code Ann. § 47–2–314(2). Ideal argues that because the cement it supplied to

---

**5.** In response to Ideal's contention that there can be no finding of an express warranty because Knox/Porcelain is without proof of "reliance" on the statement regarding alkali content, Knox/Porcelain assert that proof of reliance is not necessary to sustain their claim. Section 47–2–313 makes no specific reference to a "reliance" requirement but instead requires that a statement, in order to become an express warranty, have been a "basis of the bargain." Comment 3 of the Official Comments to section 2–213 explains that "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." Nevertheless, in determining whether a particular statement was a basis of the bargain, courts, including the Tennessee courts, employ the test of whether the buyer relied on the affirmation or promise. J. White & R. Summers, *Uniform Commercial Code* § 9–4 (2d ed. 1980); *Fletcher v. Coffee County Farmers Cooperative,* 618 S.W.2d 490 (Tenn.Ct. App.1981) (jury could have found reliance on facts presented). Thus, while Knox/Porcelain need not make a strong showing of reliance, they must show that there was at least minimal reliance on the statement at issue.

Knox/Porcelain complied with the American Society for Testing and Materials (ASTM) standards for Type I Portland cement, the type of cement described on Knox/Porcelain's purchase orders, the cement was merchantable. Knox/Porcelain, though, assert that Ideal did not effectively disclaim the implied warranty of merchantability of the cement and contend that there exist questions of fact as to whether Ideal breached this implied warranty when it supplied them with high-alkali cement.

To be merchantable, goods must "pass without objection in the trade under the contract description," and be suitable for "ordinary" purposes, which may not necessarily be the buyer's purposes. It has been said that where goods comply with an industry standard and are sufficient for ordinary use, there is no breach of the implied warranty of merchantability. *See Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir.1975); *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508 (7th Cir.1988) (though steel was not fit for buyer's particular purpose, it was merchantable; buyer did not establish steel was unfit for ordinary purposes and that steel was of less than average quality). One issue presented in this case is whether the cement supplied by Ideal complied with industry standards for the product described in the contract. In this regard, there is clearly a dispute between the parties as to the type cement that Ideal was required to furnish under the Knox/Porcelain purchase orders and hence there is a dispute as to the applicable industry standard. Ideal asserts that to fulfill Knox/Porcelain's purchase orders, it was required only to supply cement which complied with the ASTM specifications for Type I Portland cement; while there was an ASTM specification for Type I Low Alkali cement, that specification had no applicability since Knox/Porcelain's purchase order did not expressly request low alkali cement. Knox/Porcelain do not dispute Ideal's assertion that the cement supplied by Ideal complied with all industry specifi-

cations for Type I Portland cement. Rather, Knox/Porcelain assert that based on their thirty-year course of dealing with Ideal, Ideal was obligated to supply cement which met the ATSM specifications for Type I Low Alkali cement and that its failure to do so amounted to a breach of the implied warranty of merchantability.

Tenn.Code Ann. § 47–1–205(1) defines "course of dealing" as a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." A course of dealing can "give particular meaning to and supplement or qualify terms of an agreement." Tenn.Code Ann. § 47–1–205(3). The evidence of record indicates that from at least the early 1960's through 1977,[6] Knox/Porcelain ordered Type I Portland cement from Ideal and Ideal supplied them with a cement that had a low alkali level. Beginning in 1978, however, the cement Ideal supplied, though it was Type I Portland cement, had a higher alkali level. Knox/Porcelain acknowledge that while prior to 1961 there was no optional ASTM standard for low alkali cement, beginning in 1961, they could have specified on their purchase orders that they wanted Type I Low Alkali cement. They contend, however, that it was not necessary that they do so since even though they continued to order simply Type I Portland cement, Ideal continued to send to Knox/Porcelain and all of its customers a low alkali cement. In the court's opinion, in view of the above described evidence, there exists a question of fact as to whether by virtue of a course of dealing between Ideal and Knox/Porcelain, Ideal was required to provide a low alkali cement in response to Knox/Porcelain's purchase orders, the resolution of which also will serve to resolve the issue of Ideal's compliance with the applicable industry standard.

The court has discerned no contention by Knox/Porcelain that the cement furnished

---

**6.** The parties apparently dispute when Ideal first began supplying Knox/Porcelain with cement; Knox/Porcelain contend that the relationship began in the late 1940's whereas Ideal apparently claims that Knox/Porcelain first ordered cement from Ideal in the early 1960's.

by Ideal did not comply with ASTM standards and was not merchantable for the type of cement that it was, i.e., a cement other than a low alkali cement. Their claim appears to be simply that the the wrong type cement was supplied—it should have been low alkali—and that the cement which was supplied was not fit for the ordinary purposes for which low alkali cement is used. Assuming Knox/Porcelain were to establish that Ideal was in fact obligated to supply them with a low alkali cement, then Knox/Porcelain would bear the burden to further establish that their use of the cement was an "ordinary use" for low alkali cement.[7]

Based on the foregoing, the court concludes that Ideal's motion for summary judgment as to Knox/Porcelain's claim based on an alleged breach of an implied warranty of merchantability should be denied.

*Implied Warranty of Fitness for Particular Purpose*

■ Knox/Porcelain have alleged that Ideal breached an implied warranty of fitness for a particular purpose by providing cement with an unacceptably high alkali content. According to Knox/Porcelain, when Ideal (then Volunteer) first began supplying cement for Knox/Porcelain in 1949, Ideal was aware of the use to which the cement would be put, knew of the potential for an alkali-silica reaction and knew that Knox/Porcelain were relying on Ideal to help them select an acceptable cement. Tenn.Code Ann. § 47–2–316 provides that if the seller knows that the buyer requires the goods for a "particular purpose," and if the seller also knows that the buyer is relying on the seller to supply suitable goods, then the seller is obligated to provide goods which are "fit for such [particular] purposes." In the case at bar, it is uncontroverted that Ideal was aware of the use for which Knox/Porcelain required cement. The question here concerns the reliance element. Knox/Porcelain argue that as a result of the representations contained in the 1949 letter from Ideal, coupled with a thirty-year course of dealing between the parties, Knox/Porcelain were entitled to rely and in fact did rely on Ideal to furnish suitable cement for Knox/Porcelain's particular use and that Ideal knew of this reliance. Ideal, on the other hand, maintains that it did not know that Knox/Porcelain were relying on Ideal's skill and judgment to furnish an appropriate cement and that Knox/Porcelain did not in fact rely on Ideal. Ideal asserts that at least at the time of the sale of the allegedly defective cement, Knox/Porcelain were knowledgeable buyers who were aware of their production needs and who had no need for reliance on Ideal; they simply ordered a cement which Ideal provided. In the court's opinion, there exist issues of material fact regarding this reliance element.

Ideal argues that even if some implied warranty of fitness had been made, it was effectively rescinded following a limited express warranty made by Ideal in 1980, which provided:

> Ideal cements are warranted to conform at the time of shipment with the current specifications of either the American Society for Testing and Materials, or the American Association of State Highway and Transportation Officials, or the Federal Government, for the type of cement designated. By mutual agreement between Ideal and Buyer, different special cement specification requirements will be met. NO OTHER WARRANTY IS MADE OR TO BE IMPLIED.

Even this provision, as Knox/Porcelain point out, leaves open the possibility that the parties have agreed to "different special cement specification requirements."

Finally, Ideal asserts that all of Knox/Porcelain's warranty claims are barred as a result of their failure to timely notify Ideal of the alleged breaches. The court concludes, though, that there exists a question of fact concerning whether Knox/Porcelain notified Ideal of their

---

7. This, of course, presupposes that uses which might be considered "ordinary" vary depending on the alkali content of the cement which may not be the case. That, likewise, would be subject to proof at trial.

breach of warranty claims within a reasonable time.

In summary, the court must conclude that in regard to Knox/Porcelain's claim for breach of warranty of fitness for a particular purpose, there remain disputed material issues of fact that preclude the entry of summary judgment.

### Statute of Limitations

 Under the law of Mississippi, the applicable Mississippi statute of limitations is applied unless the statute of limitations of the state whose substantive law will be applied is deemed substantive. *See Shewbrooks v. A.C. and S., Inc.*, 529 So.2d 557 (Miss.1988); *White v. Malone Properties*, 494 So.2d 576 (Miss.1986); *Price v. International Tel. & Tel. Corp.*, 651 F.Supp. 706 (S.D.Miss.1986). There is no indication here that Tennessee deems its warranty statute of limitations substantive, and in fact, the contrary appears. *See Sigler v. Youngbold Truck Lines, Inc.*, 149 F.Supp. 61 (E.D.Tenn.1957). Therefore, the six-year limitations period provided by Miss. Code Ann. § 75–2–725 would appear to apply to the cross-claim asserted against Ideal by Knox/Porcelain. That section provides that the statute of limitations for breach of warranty claims begins to run from the time of "tender of delivery." Ideal, therefore, argues that damages due to breach of warranty for cement tendered to Porcelain prior to May 27, 1982 are time-barred, since the cross-claim was filed May 27, 1988.[8] It reasons that summary judgment should be granted for any damages due to defective insulators containing cement tendered to Knox/Porcelain prior to that May 27, 1982 date. With this position, the court cannot agree.

 Though there are no Mississippi cases on the subject, the court believes that the Mississippi Supreme Court, if confronted with the issue, would adopt the almost universally held view that a claim for indemnity predicated on a breach of warranty runs not from the time of tender of delivery, but from the time the indemnitee's liability is fixed, by final judgment or otherwise. *See* 41 Am.Jur.2d § 39. The cases subscribing to this rule are numerous and are based on the principle that a statute of limitations begins to run only when the cause of action accrues; a cause of action for indemnity does not accrue until the loss or damage actually occurs, and that loss or damage does not occur until such time as the indemnitee's liability to the injured party has been determined. *See, e.g., Koonce v. Quaker Safety Products & Mfg. Co.*, 798 F.2d 700 (5th Cir.1986) (Texas law) (reciting "established rule" as to when causes of action for indemnity or contribution accrue); *Chesapeake & Potomac Tel. Co.*, 401 A.2d 101 (Del.1979); *Holland v. Fid. & Dep. Co.*, 623 S.W.2d 469 (Tex.Ct.App.1981); *Thornton v. Hull*, 515 F.Supp. 715 (D.Mass.1981); *Tsz Ki Yim v. Home Indem. Co.*, 95 F.R.D. 349 (D.D.C. 1982); *Postley v. Harvey*, 153 Cal.App.3d 280, 200 Cal.Rptr. 354 (2nd Dist.1984).[9]

### Conclusion

Based on the foregoing, it is ordered that Ideal's motion for summary judgment, as it pertains to Knox/Porcelain's cross-claim based on theories of negligence and express warranty, is granted. The remainder of the motion is denied.

---

**8.** In addition, Ideal claims that since Knox/Porcelain began using cement from another supplier on August 23, 1983 and no longer used Ideal's cement after that date, all claims for damages after that date should be dismissed. This claim is clearly without merit, for damages could continue to accrue during that post–1983 time period, even though Knox/Porcelain had changed suppliers.

**9.** While application of this rule would appear to render third-party claims for indemnity or contribution premature, it has been recognized that such third-party claims, though perhaps technically premature, are permitted for reasons of judicial efficiency and economy and for the convenience of the parties. *See, e.g., Koonce*, 798 F.2d at 708–13; *George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc.*, 69 A.D.2d 725, 419 N.Y.S.2d 584 (2d Dept.1979).