893 P.2d 438

**In re CONSOLIDATED VISTA HILLS RETAINING WALL LITIGATION.**

**AMREP SOUTHWEST, INC., Defendant–Third–Party–Plaintiff–Appellant**

v.

**SHOLLENBARGER WOOD TREATING, INC., Third–Party–Defendant–Appellee.**

**No. 21889.**

Supreme Court of New Mexico.

March 6, 1995.

Rehearing Denied March 23, 1995.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Henry M. Bohnhoff, Edward Ricco, Bruce Hall and David W. Bunting, Albuquerque, for appellant.

Keith S. Burn, P.A., Keith S. Burn and Clara Ann Bowler, Albuquerque, for appellee.

## OPINION

RANSOM, Justice.

Amrep Southwest, Inc., appeals from a district court order granting summary judgment in favor of Shollenbarger Wood Treating, Inc., on Amrep's third-party complaint seeking indemnification and damages for negligence and strict liability in the supply of inadequate building materials. Amrep had used the materials in the construction of homes that were thereby rendered defective to the damage of the homeowners. The trial court concluded that because Amrep was partially at fault for any damages awarded against it in favor of the homeowners, it was precluded from seeking indemnification from the supplier. The court also concluded that the economic-loss rule barred Amrep's claim for indemnification and other business-loss damages. Because we believe there is a factual issue yet to be resolved, and because we adopt a doctrine of proportional indemnification, we reverse and remand.

*Facts.* Amrep built 180 homes into the slope of a hill in a Rio Rancho development. Amrep designed the exterior wall of the homes to support and retain six to thirty-six inches of soil on the uphill side of each home. To prevent rot and attack by insects, the portion of the exterior wall below the soil was to be built with pressure-treated wood. The pressure treatment process involves the infusion of chemicals into wood. Amrep contracted with Baldridge Lumber Company to provide the pressure-treated wood for most of the homes. Baldridge, in turn, contracted with Shollenbarger either to supply already treated wood or to treat wood supplied by Baldridge. Amrep did not have a contract with Shollenbarger.

By May 1986 Amrep had entered into purchase agreements for ten of the homes and had closed on the sale of five others. On May 5 representatives from Amrep and Baldridge met with Donn Keefe, a representative of the American Wood Preservers Bureau ("AWPB"). Keefe informed Amrep that he believed the wood being used for the retaining walls was not adequately treated. The type of wood being used was spruce, and spruce generally is untreatable. After the meeting Amrep asked Baldridge to investi-

gate whether the treatment level of the wood in question was adequate. Baldridge consulted with Shollenbarger and then gave oral and written assurances to Amrep that the supplied lumber was acceptable for use in retaining walls. Baldridge gave the same assurances to the Construction Industries Division inspector who approved Amrep's construction of the homes. Relying on Baldridge's assurances, Amrep took no further action.

*Proceedings.* In 1990 the New Mexico Attorney General sued Amrep under the Unfair Practices Act, NMSA 1978, §§ 57–12–1 to –22 (Repl.Pamp.1987 & Cum.Supp.1994). The Attorney General alleged that Amrep made misleading statements regarding the quality of wood used in its homebuilding. In 1992 the parties settled the lawsuit. In exchange for the Attorney General dropping the charges, Amrep agreed to offer to inspect all of the 180 homes and to perform necessary repairs on any home that showed test results below a certain level. Individual homeowners could reject this offer and pursue individual claims; however, if the homeowners accepted the offer, they waived any other claims that they might pursue against Amrep. All but nineteen homeowners accepted the offer, and the others pursued individual litigation. Two of the nineteen settled their claims with Amrep; the remaining seventeen are still pursuing their actions, alleging breach of warranty, negligence, fraud, negligent misrepresentation, and violation of the Unfair Practices Act. One plaintiff also has alleged strict liability in tort. None of the homeowners have sued Baldridge or Shollenbarger.

In its third-party complaint against Baldridge and Shollenbarger, Amrep seeks traditional indemnification or proportional indemnification for any liability that it may have to the homeowners and for its expenses in carrying out the terms of the settlement agreement with the Attorney General. Amrep also seeks punitive damages and attorney's fees. Amrep sought compensatory business-loss damages against either Baldridge or Shollenbarger but has not pursued an appeal from dismissal of that claim.

Shollenbarger filed several motions for summary judgment, arguing that it had no duty to indemnify Amrep and that the economic-loss rule barred Amrep's compensatory business-loss claims. The trial court dismissed all of Amrep's claims against Shollenbarger on the basis that Amrep participated with Shollenbarger in any alleged wrongdoing and was not entitled to indemnification. The trial court also concluded that the economic-loss rule prevented recovery of both strict liability and negligence damages, *including indemnification.* Amrep appeals to this Court pursuant to SCRA 1986, 1–054(C)(2) (Repl.Pamp.1992) (stating that judgment dismissing all claims against one party in multiple-party litigation is a final judgment), and SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992) (giving Supreme Court jurisdiction over claims sounding in contract).

*Traditional indemnification.* Under traditional indemnification an indemnitee is entitled to be made whole by a third party such as the primary wrongdoer. *Rio Grande Gas Co. v. Stahmann Farms, Inc.*, 80 N.M. 432, 436, 457 P.2d 364, 368 (1969). Traditional indemnification differs from contribution in that contribution requires each joint tortfeasor to share a common liability. *See id.* Further, contribution was not recognized at common law. *See id.* at 434, 457 P.2d at 366. In essence, traditional indemnification is a judicially created common-law right that grants to one who is held liable an all-or-nothing right of recovery from a third party; contribution is a statutorily created right that allows proportional distribution of liability as between the parties at fault.

Traditional indemnification would appear to apply only when there is some independent, preexisting legal relationship between the indemnitee and indemnitor.[1] *See Peak*

---

1. Some courts and commentators have suggested that in exceptional circumstances indemnification should be allowed between concurrent tortfeasors who do not have an independent, preexisting legal relationship. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 51, at 343–44 (5th ed.1984). These exceptional circumstances typically are defined as when there is a great difference in the degree of fault between concurrent tortfeasors or when the character of the duties owed by the tortfeasor to the plaintiffs is vastly different or disproportionate. *Id.*

*Drilling Co. v. Halliburton Oil Well Cementing Co.,* 215 F.2d 368, 370 (10th Cir.1954) (stating relationship is one "under which the indemnitor owes a duty either in contract or tort to the indemnitee apart from the joint duty they owe to the injured party"). The right to indemnification may be established through an express or implied contract, or "may ... arise without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 51, at 341 (5th ed. 1984); *see also* 42 C.J.S. *Indemnity* § 3, at 74 (1991) (stating that indemnification is based on equitable principles).

The right to indemnification may arise through vicarious or derivative liability, as when an employer must pay for the negligent conduct of its employee under the doctrine of respondeat superior or when a person is directed by another to do something that appears innocent but is in fact wrongful. *Rio Grande Gas Co.,* 80 N.M. at 436, 457 P.2d at 368. Further, traditional indemnification principles apply in both negligence and strict liability cases involving persons in the chain of supply of a product, 2A Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 15.03[1], at 15–32 to –34 (1990), and in breach of warranty cases, *Schneider Nat'l, Inc. v. Holland Hitch Co.,* 843 P.2d 561, 587 (Wyo.1992). *See generally* Restatement (Second) of Torts § 886B (1977) (listing situations in which parties may be entitled to indemnification). In this case an independent, preexisting legal relationship between Amrep and Shollenbarger is established by their respective positions in the chain of distribution of a product. Thus, provided it could prove all of the requisite elements, Amrep would be entitled to seek indemnification.

The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault. Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor. New Mexico first adopted the active/passive and in pari delicto

tests in *Krametbauer v. McDonald,* 44 N.M. 473, 104 P.2d 900 (1940). *Krametbauer* involved a situation in which a child, crossing a highway after exiting a school bus, was struck and killed by a speeding motorist. The trial court found that the negligence of both the bus driver and the motorist had contributed to the death of the child. The bus driver sought indemnification from the motorist claiming the former was only "passively negligent" whereas the latter was "actively negligent and therefore primarily liable." *Id.* at 480, 104 P.2d at 904. The Court held each was an active tortfeasor and therefore in pari delicto and primarily liable. *Id.* at 481, 104 P.2d at 905. The Court denied indemnification for that reason without consideration of whether active/passive concurrent tortfeasors must nonetheless have some independent, preexisting legal relationship to support indemnification. Although we find such a relationship in the chain of supply of the product in question here, we do observe that no New Mexico case actually has denied indemnification to a passive wrongdoer because of the absence of an independent, preexisting legal relationship.

Other cases from New Mexico and from the Tenth Circuit Court of Appeals interpreting New Mexico law have held that New Mexico continues to follow the *Krametbauer* active/passive and in pari delicto doctrines. The doctrine of in pari delicto, we note, has reference to nothing more than the active fault of each wrongdoer or the passive fault of each. *See, e.g., Rio Grande Gas Co.,* 80 N.M. at 436–37, 457 P.2d at 368–69; *Trujillo v. Berry,* 106 N.M. 86, 88–89, 738 P.2d 1331, 1333–34 (Ct.App.) (stating that New Mexico adheres to traditional indemnification principles in some circumstances), *cert. denied,* 106 N.M. 24, 738 P.2d 518 (1987); *cf. Morris v. Uhl & Lopez Eng'rs, Inc.,* 442 F.2d 1247, 1254 (10th Cir.1971) (stating that under New Mexico law party could not recover indemnification because its negligence was of the same kind as that of another party and therefore the parties were in pari delicto); *United States v. Reilly,* 385 F.2d 225, 229 (10th Cir.1967) (following New Mexico law as established in *Krametbauer* ). In one case, however, the Tenth Circuit anticipated that,

if given the chance, New Mexico would eliminate the active/passive distinction in favor of proportional indemnification principles. *Herndon v. Seven Bar Flying Serv., Inc.*, 716 F.2d 1322, 1332 (10th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). The *Herndon* court based its opinion on the fact that New Mexico adopted comparative negligence and other states that have adopted comparative negligence have adopted comparative indemnification. *Id.*

*Active and passive conduct defined.* Active conduct "is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." *Schneider Nat'l, Inc.*, 843 P.2d at 574 (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 119 Cal.Rptr. 449, 453, 532 P.2d 97, 101 (1975) (in bank)). Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another. *See Rio Grande Gas Co.*, 80 N.M. at 436, 457 P.2d at 368; Robert A. Leflar, *Contribution and Indemnity Between Tortfeasors*, 81 U.Pa. L.Rev. 130, 154 (1932). Passive conduct may also occur when a party is nothing more than the retailer in the chain of distribution of a product. *See Trujillo*, 106 N.M. at 90, 738 P.2d at 1335.

There is a subtle distinction between the situation in which a party fails to discover and remedy a dangerous condition and the situation in which a party discovers a dangerous condition created by another but does nothing to remedy it. In the first instance, the conduct of the party not discovering the dangerous condition is passive. That party is entitled to indemnification from the one creating the condition because "as between the two parties the courts have clearly seen the greater responsibility of the one who created the dangerous situation." Leflar at 157. In the second instance, the conduct of the party who does nothing after discovering

the dangerous condition is active. That party is not entitled to traditional indemnification from the one creating the condition because to do so "would be to shift the whole burden of loss onto one tortfeasor from another whose improper conduct is fully as odious." *Id.* at 158.[2]

*Amrep's traditional indemnification claim.* Amrep argues that the trial court erred by dismissing its traditional indemnification claim because there still exists a question of fact whether Amrep's conduct was active or passive. Alternatively, Amrep contends that it would still be entitled to indemnification under a strict liability theory even if its conduct was active. Shollenbarger argues that Amrep's negligence was determined conclusively in companion litigation, and Amrep is barred by the doctrine of collateral estoppel from relitigating this claim. Shollenbarger also argues that, as a matter of law, Amrep's conduct was active, and this conduct bars traditional indemnification for both negligence and strict liability damages.

■ *–Collateral estoppel.* In the companion litigation, *Hicks v. Amrep Construction Corp.*, No. 20,690 (N.M. Apr. 5, 1994), this Court filed an unpublished decision reviewing, among other issues, whether a jury verdict entered against Amrep was supported by substantial evidence. We held that the award of compensatory damages for breach of contract and negligence was supported by the evidence, and we affirmed the jury verdict. In particular, we stated that "Amrep does not dispute the validity of the jury's award for breach of contract on appeal [and] Amrep does not argue that the jury wrongfully determined that it was liable for negligence." *Id.* at 11.

Shollenbarger posits that this Court should give collateral estoppel effect to *Hicks* and hold that Amrep is precluded from contesting its negligence in this case. For collateral estoppel to apply, an issue must have been "actually and necessarily determined" in a prior action. *Silva v. State*, 106 N.M. 472, 474, 745 P.2d 380, 382 (1987). Collateral

---

**2.** We note that we are not here dealing with a contractual right to indemnification for active conduct.

estoppel will not apply if "the record is insufficient to determine what issues were actually and necessarily determined by prior litigation." *Id.* at 476, 745 P.2d at 384. Shollenbarger specifically attempts to use *Hicks* to preclude Amrep from arguing that its conduct was not active. The *Hicks* decision, however, does not discuss the active/passive distinction in any way. As discussed below, it is not known whether liability in *Hicks* was based on a passive negligent failure to discover or an active negligent omission to correct a known defect. Although the decision involved an indemnification claim against Baldridge, the Court did not discuss that issue in the context of whether Amrep's conduct was active. A finding of negligence is not necessarily a finding of active conduct. Thus the record is insufficient to determine whether the issue of Amrep's active conduct was actually and necessarily determined; collateral estoppel does not apply.

■ –*Factual issue: active and passive conduct.* Shollenbarger cites ten facts to support its argument that Amrep's conduct was active as a matter of law. In particular, Shollenbarger alleges that Amrep owned and developed the real estate known as the Vista Hills Subdivision; Amrep designed the retaining walls for the houses; Amrep built all of the houses; Amrep's plans required wood that would be pressure treated to a certain retention level; lumber treated to the requisite level should be stamped with an AWPB–FDN stamp (signifying that the wood is "foundation" quality) that would be clearly visible (although wood may be treated to the requisite level without the stamp); Shollenbarger carried wood that had been treated to the requisite level in its inventory; Amrep did not give a copy of its plans to Baldridge; Amrep contracted with Baldridge to supply framing packages for the houses; Amrep did not have a contract with Shollenbarger; and Baldridge did not tell Shollenbarger that the wood was to be used below the level of the soil. Amrep does not dispute the facts but argues that the facts lead to several possible interpretations, including the conclusion that Amrep's conduct was passive.

Whether a factual issue exists depends on application of the definitions of active and passive conduct to the facts of this case. Applying these definitions to the facts provided, it is difficult for this Court to determine whether Amrep's conduct was active or passive. Many of the facts alleged by Shollenbarger are inapposite to whether Amrep's conduct was active, including the facts that Amrep owned and developed the real estate, that Amrep designed the retaining walls (the design is not at issue, the wood used is at issue), and that Amrep did not have a contract with Shollenbarger. Other facts tend to show that Shollenbarger was not negligent, including the facts that Amrep did not give a copy of its plans to Baldridge, that Amrep contracted with Baldridge, and that Shollenbarger was not told that the wood would be used below the soil. Shollenbarger's negligence, however, is not at issue in this appeal.

The remaining facts may be interpreted as active conduct or they may be interpreted as passive failure to discover and remedy a dangerous condition. The facts all relate to whether Amrep knew or should have known that it was using the wrong wood in building the retaining walls. None of the facts, however, conclusively prove that Amrep knew or should have known that it was using the wrong wood. As Shollenbarger admits, the wood could have been of adequate quality even though it did not carry the requisite stamps. Further, other facts show that Amrep investigated the adequacy of the wood after it was alleged that the wood did not meet the requisite standards.

Thus, on the one hand, Amrep may have knowingly used inadequate wood, and it would not be proper under the principles of traditional indemnification to hold Shollenbarger responsible for something that was at least partially the fault of Amrep. On the other hand, Amrep may have conducted a thorough investigation of the quality of the wood, satisfied itself that the wood was adequate, and may not thereafter have knowingly used poor materials. While such use of inadequate materials may subject Amrep to liability because of its position as contractor or because it nonetheless should have known the materials were inadequate, neither theory of liability would bar Amrep's claim for

indemnification. Because the facts are open to contradictory interpretations, the trial court improperly granted summary judgment in favor of Shollenbarger on Amrep's traditional indemnification claim.

■ –*Indemnification in strict liability.* Amrep cites several cases for the proposition that it may seek indemnification from the original manufacturer under a theory of strict liability, even if its conduct is found to be "active". The basis for its argument is that a manufacturer may be held strictly liable without proof of fault or negligence, and thus concepts of fault or negligence or active/passive conduct should not be considered in determining indemnification claims based on strict liability.

In *Trujillo,* 106 N.M. at 89, 738 P.2d at 1334, our Court of Appeals addressed the question whether a retailer could seek indemnification from a manufacturer if the retailer was found strictly liable for injuries caused by a defective product. The Court held that "[when] the manufacturer and retailer are held strictly liable in tort and the latter's liability resulted solely from its passive role as the retailer of the product furnished it by the manufacturer, indemni[fication] may lie in favor of the retailer against the manufacturer." *Id.* at 90, 738 P.2d at 1335. Although the Court recognized that there may be situations in which a retailer could not recover indemnification against a manufacturer, it specifically held that the retailer may recover indemnification when its conduct was passive. *Id.*

■ Amrep relies on *Trujillo* for support because the Court stated that "concepts such as active-passive negligence are the antithesis of strict liability." *Id.* at 89, 738 P.2d at 1334. Indeed, other authorities have stated that "[t]he active-passive negligence distinction does not apply to strict liability in tort." 2A Frumer & Friedman § 15.03[1], at 15–34 (citing cases for same proposition). These statements are made, however, in the context of determining liability to the victim. *See Trujillo,* 106 N.M. at 89, 738 P.2d at 1334; 2A Frumer & Friedman § 15.03[1], at 15–34. In that sense, a court is not trying to determine fault because "liability may be imputed to the supplier of the product without the presence of negligence, or fault, on his part." *Trujillo,* 106 N.M. at 89, 738 P.2d at 1334. Rather, the purpose of strict liability is to provide an injured party with several sources from which the victim may recover damages without proving negligence. *Id.* at 88, 738 P.2d at 1333. Thus in determining liability to the victim in strict liability, the active/passive distinction does not apply.

By contrast, the whole purpose of traditional indemnification is to shift liability from one who is not at fault to one who is at fault. Thus the active/passive distinction does apply. Traditional indemnification has its genesis in equitable principles of unjust enrichment and restitution. 2 George E. Palmer, *The Law of Restitution* § 10.6(c), at 410–11 (1978). It would be improper to allow full indemnification in strict liability when the party seeking indemnification is partially at fault; one is not entitled to restitution for that part of the damages for which the party is responsible. Therefore, in all strict liability cases the conduct of the party seeking traditional indemnification must have been passive before that party may recover full indemnification from the manufacturer of a defective product.

■ *Economic-loss rule.* The trial court dismissed Amrep's negligence and strict liability action against Shollenbarger for business losses, other than damages and expenses paid on third-party claims, ruling that such an action is barred by the economic-loss rule. Amrep does not appeal that dismissal, and we do not address the validity of the trial court's ruling on that issue. Amrep argues, however, that the trial court also relied on the economic-loss rule to dismiss Amrep's claims for indemnification. Although it is not clear whether, in moving for summary judgment, Shollenbarger argued that the economic-loss rule barred Amrep's claim for indemnification, and although the trial court did rule at one point that Amrep's claim for indemnification was barred because its conduct was active, the court later elaborated on this ruling by stating that "the economic-loss doctrine prohibits ... an indemnification

claim." We now address the merits of that ruling.[3]

Our Court of Appeals adopted the economic-loss rule in *Utah International, Inc. v. Caterpillar Tractor Co.*, 108 N.M. 539, 775 P.2d 741 (Ct.App.), *cert. denied*, 108 N.M. 354, 772 P.2d 884 (1989). The Court held that "in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id.* at 542, 775 P.2d at 744 (citation omitted). The Court adopted the rule "in order to allow commercial parties to freely contract and allocate the risk of defective products as they wish." *Id.*

Amrep argues that this Court should overrule *Utah International* because it is inconsistent with New Mexico law regarding strict liability and negligence. Citing for support SCRA 1986, 13–1406 (Repl.Pamp.1991) (holding supplier "liable for harm proximately caused by an unreasonable risk of injury"), Amrep contends that a party is entitled to recover in strict liability all damages, including economic loss. In addition, citing for support *Solon v. WEK Drilling Co.*, 113 N.M. 566, 829 P.2d 645 (1992), Amrep contends that a party is entitled to recover all foreseeable damages, including economic loss.

■ The purpose of the economic-loss rule, however, is "to preserve the bedrock principle that contract damages be limited to those 'within the contemplation and control of the parties in framing their agreement.'" *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446 (4th Cir.1990) (quoting *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514, 517 (1983)). The law of contract allows parties to bargain and allocate the risk that the product will self-destruct. As a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate

remedy. If we overrule *Utah International*, contract law would be subsumed by strict liability and negligence. In order to preserve the line between contract law and tort law, we decline to overrule *Utah International*.

Only a handful of courts have ruled on whether the economic-loss rule prohibits a party from seeking indemnification. Amrep cites two California cases for the proposition that an indemnification claim differs from a claim for economic-loss damages. *See GEM Developers v. Hallcraft Homes of San Diego, Inc.*, 213 Cal.App.3d 419, 261 Cal.Rptr. 626, 631, *review denied* (Nov. 15, 1989); *Gentry Constr. Co. v. Superior Court*, 212 Cal. App.3d 177, 260 Cal.Rptr. 421, 423 (1989). In these cases the California Court of Appeals determined that if concurrent tortfeasors were held liable to a consumer for damages caused by a defective product, the economic-loss rule would not prevent one tortfeasor from seeking indemnification from another tortfeasor for the latter's proportional share of all damages. The California system of "equitable indemnification," however, is the equivalent of "contribution" in New Mexico under the Uniform Contribution Among Tortfeasors Act, NMSA 1978, §§ 41–3–1 to – 8 (Repl.Pamp.1989 & Cum.Supp.1994). Thus those cases are instructive but distinguishable.

■ Given the paucity of authority in this area, we must turn to policy considerations to determine whether the economic-loss rule bars indemnification claims. As stated above, the purpose of indemnification is to allow a party who has been held liable for an injury but who was not at fault to seek recovery from one who was at fault. Indemnification is based on the fact of liability. As a matter of policy, if there is liability, the one held liable but not at fault should be entitled to recover from the one at fault. *Cf. East Miss. Elec. Power Ass'n v. Porcelain Prods. Co.*, 757 F.Supp. 748, 751–52 (S.D.Miss.1990) (dismissing indemnification claim because party seeking indemnification was not liable to plaintiff); 41 Am.Jur.2d *Indemnity* § 33,

---

3. We have carefully reviewed the whole record in this case and it is not clear to us whether the trial court made alternative rulings or whether

the court applied different doctrines to different counts. Our resolution of the issue before us, however, makes the distinction immaterial.

at 723 (1968) ("Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays.").

■■■■ The purpose of the economic-loss rule is not to bar the recovery of economic-loss damages; rather, the rule bars recovery of such damages in tort. An indemnitee thus may be held liable for economic-loss damages under a contract-based theory. By contrast, the purpose of indemnification is to prevent an unjust result by shifting liability from one not at fault to one at fault. *See* Keeton et al. § 51, at 341. Although a person cannot be held liable for economic-loss damages in tort because of the economic-loss rule, when that person is held liable for economic-loss damages in contract, and that person's liability is attributable to the fault of another, it would be unjust not to allow indemnification. We therefore hold that the economic-loss rule does not bar a claim for indemnification. If a party is held liable for damages that are the fault of another, the former may seek indemnification from the latter regardless of the basis for the former's liability.[4] This does not abrogate the economic-loss rule because parties are still bound by their contractual agreements (including indemnification agreements) and because allowing indemnification in this context would in no way blur the line between contract and tort.

■■■■ *Proportional indemnification.* A growing number of courts are applying comparative fault principles to indemnification claims and replacing the all-or-nothing rule of traditional indemnification with a system of apportioning damages according to relative fault. *See, e.g., Allison v. Shell Oil Co.,* 113 Ill.2d 26, 99 Ill.Dec. 115, 119–20, 495 N.E.2d 496, 500–01 (1986) (declaring that active/passive doctrine is replaced by system applying comparative-fault principles); *Schneider Nat'l, Inc. v. Holland Hitch Co.,* 843 P.2d 561, 576–77 (Wyo.1992) (recognizing Wyoming's acceptance of relative-fault doctrine over the "all-or-nothing rule"). Amrep refers to the application of comparative fault to indemnification claims as "comparative indemnification"; Shollenbarger entitles it "equitable implied comparative indemnity"; we shall refer to the doctrine as "proportional indemnification".

Proportional indemnification has its genesis in jurisdictions that did not adopt a system of contribution among tortfeasors. *See Schneider Nat'l, Inc.,* 843 P.2d at 573. Other state courts adopted proportional indemnification because they were frustrated with inadequate contribution statutes. Restatement (Second) of Torts § 886B cmt. m (1977). In most cases the adoption of proportional indemnification has followed a state's legislative or judicial rejection of contributory negligence and adoption of comparative fault. *See, e.g., American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 201, 578 P.2d 899, 918 (1978) (in bank); *Allison,* 495 N.E.2d at 501 ("Active-passive indemnity, like contributory negligence, perpetuates inequality by its inability to apportion loss and its refusal to grant any relief whatsoever to a party whose conduct is considered 'active' regardless of how much or little other tortfeasors are at fault."); *cf. Herndon,* 716 F.2d at 1332 (stating that when "states have adopted the comparative negligence approach, the indemnity principles in those states have changed from the traditional all or nothing approach [to] damages measured by the degree of comparative fault of all the parties").

New Mexico has adopted by judicial fiat a system of comparative fault. *See Scott v. Rizzo,* 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981). In *Scott* the Court based its abandonment of contributory negligence "upon the undeniable inequity and injustice in casting an entire accidental loss upon a plaintiff whose negligence combined with another's negligence in causing the loss suffered, no matter how trifling plaintiff's negligence might be." *Id.* at 689, 634 P.2d at 1241. The Court concluded that "justice is not achieved by the anachronistic and inequitable contributory negligence rule of law." *Id.*

---

4. The right to indemnification may arise simply from the fact that the indemnitee had to defend the action brought by the third-party and the proposed indemnitor refused or failed to proffer a defense. *See Bloom v. Hendricks,* 111 N.M. 250, 256, 804 P.2d 1069, 1075 (1991). The innocent indemnitee should not have to bear the burden of defending the claim.

Following *Scott,* our Court of Appeals abrogated joint and several liability among concurrent tortfeasors. *See Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 159, 646 P.2d 579, 586 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982). The Court determined that joint and several liability could not survive our adoption of pure comparative negligence and explained that "damages are to be apportioned on the basis of fault." *Id.*

Thus, to establish an equitable system in which a plaintiff would not have to bear the whole burden of a loss when another was also at fault, we adopted in *Scott* the doctrine of comparative negligence. To establish an equitable system in which in most cases a party is only liable to the extent that it was to blame for the damages to the victim, our Court of Appeals adopted in *Bartlett* the doctrine of several liability. Now, to establish an equitable system in which a defendant who cannot raise the fault of a concurrent tortfeasor as a defense because of the plaintiff's choice of remedy, we adopt the doctrine of proportional indemnification under which a defendant who is otherwise denied apportionment of fault may seek partial recovery from another at fault.

*Proportional indemnification applies in limited circumstances only.* Shollenbarger argues that this Court should not adopt proportional indemnification because fault is already apportioned among joint tortfeasors through our doctrines of comparative fault and several liability and through the Uniform Contribution Among Tortfeasors Act, NMSA 1978, §§ 41–3–1 to –8 (Repl.Pamp.1989 & Cum.Supp.1994). We agree with Shollenbarger that proportional indemnification need

not apply when a factfinder makes a determination that a concurrent tortfeasor is proportionally liable to an injured party. By adopting pure comparative negligence in *Scott* and several liability in *Bartlett,* we have already created a system in which each concurrent tortfeasor is liable only for the percentage of damages that is attributable to his or her fault. Similarly, proportional indemnification does not apply when the Act provides for proration of damages among joint tortfeasors. *See* § 41–3–2. Under the Act, if one tortfeasor has been held liable for more than that his or her share of the fault, that tortfeasor may seek contribution from others who were at fault. *Id.*

Amrep argues that neither proportional liability nor the Act encompass situations in which the one seeking indemnification has been adjudged liable for full damages on a third-party claim that is not susceptible under law to proration of fault among joint tortfeasors. This situation is created, as here, when the plaintiff chooses to sue only one defendant and sues that defendant on a contract theory. Here the homeowners have sued Amrep under theories of breach of contract and breach of warranty.

Regardless of whether the Act is available for proportional contribution,[5] in order to establish an equitable system in which all parties are held liable for damages in proportion to their respective fault, we must modify the common-law right to indemnification when an indemnitee has been adjudged liable for full damages on a third-party claim that was not susceptible under law to proration of fault among concurrent tortfeasors. Such proportional indemnification applies only

---

5. The Act defines "joint tortfeasors" as two or more persons jointly or severally liable in tort for the same injury *irrespective of any adjudication.* Section 41–3–1. It does appear this Court has held that parties who have been sued under different theories (tort and non-tort) are not joint tortfeasors when one enters into a prejudgment settlement and the other is held liable under the different cause of action. *See Sanchez v. Clayton,* 117 N.M. 761, 765, 877 P.2d 567, 571 (1994) (interpreting prior case as holding that a party making a prejudgment settlement of negligence claim was not a joint tortfeasor with one held liable by jury for breach of contract); *McConal Aviation, Inc. v. Commercial Aviation Ins. Co.,*

110 N.M. 697, 699–700, 799 P.2d 133, 135–36 (1990) (holding that party liable in contract was not entitled to credit prejudgment settlement of another defendant who was sued in tort); *Exum v. Ferguson,* 97 N.M. 122, 125, 637 P.2d 553, 556 (1981) (holding that party liable in tort was not entitled to credit prejudgment settlement of another who was sued only in contract).

Under the Act a tortfeasor is entitled to proportional contribution if that tortfeasor has discharged liability of a joint tortfeasor. Sections 41–3–2. If the Act is not applicable here, an issue we do not further address, we nonetheless provide the same relief under proportional indemnification as contemplated by the Act.

when contribution or some other form of proration of fault among tortfeasors is not available.

Amrep urges this Court to replace completely traditional indemnification with proportional indemnification, but we decline to do so. Traditional indemnification addresses other considerations of contractual right or of restitution to which a passive wrongdoer is entitled. With the adoption of proportional indemnification we are filling a void in the overall picture that contemplates proration of liability among all those at fault. That void occurs in this case because the homeowners chose to sue only Amrep under a cause of action that does not allow proration.

By embracing proportional indemnification, this Court takes comparative fault and several liability another logical step. We now have a system in which, in almost every instance, liability among concurrent tortfeasors will be apportioned according to fault, regardless of the plaintiff's choice of remedy. As applied to this case, if Shollenbarger's alleged negligence caused Amrep to breach its contract with the homeowners, Amrep should be able to seek proportional indemnification for that percentage of fault attributable to Shollenbarger.

■ *Application of indemnification to Unfair Practices Act claim.* As to the Unfair Practices Act claim, we agree with Shollenbarger that Amrep does not have the right to seek indemnification for any portion of its settlement with the Attorney General that would constitute civil penalties. One purpose of any penalty is to punish the wrongdoer; another is to prevent the wrongdoer from engaging in similar wrongful conduct. Both of these goals would be undermined if a party could seek indemnification for damages imposed as punishment.[6] In this case, however, Amrep settled the unfair practices claim with the Attorney General pursuant to NMSA 1978, Section 57–12–9(A) (Repl.Pamp.1987). It is unclear whether the terms of the settlement included assessment of a civil penalty or whether Amrep volunteered to repair the homes in exchange for

the Attorney General dropping the charges. To the extent the settlement did not include the assessment of civil penalties and Shollenbarger is responsible for the damage to the homes, Amrep may seek indemnification against Shollenbarger.

*Punitive damages.* Amrep also seeks punitive damages from Shollenbarger. It is unclear whether Amrep seeks indemnification for punitive damages assessed against it or seeks punitive damages in addition to its indemnification claim.

■ Amrep may not seek indemnification for punitive damages assessed against it. To be found liable for punitive damages, a party must engage in wrongful conduct that rises to a willful, wanton, malicious, reckless, oppressive, or fraudulent level. *Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 747, 418 P.2d 191, 199 (1966). Under both traditional and proportional indemnification a party is barred because of unclean hands from seeking indemnification for punitive damages, just as it is barred from seeking civil penalties. *See* 2 James D. Ghiardi & John J. Kircher, *Punitive Damages* § 16.07 (1985) (discussing cases that find that allowing apportionment of punitive damages would defeat purpose of award).

■ It is more likely, however, that Amrep is seeking punitive damages in addition to its indemnification claim. Amrep contends that indemnification is a form of compensatory damages and an award of indemnification would support an award of punitive damages, citing for support *Gonzales v. Sansoy,* 103 N.M. 127, 129, 703 P.2d 904, 906 (Ct.App. 1984) (stating that award of punitive damages must be supported by award of compensatory damages). *See also Sanchez v. Clayton,* 117 N.M. 761, 765–67, 877 P.2d 567, 572–74 (1994) (stating that award of punitive damages must be supported by cause of action for compensatory or nominal damages). While we agree that indemnification is a form of compensatory damages, generally a party entitled to indemnification may recover only damages paid to the injured party and

---

6. We note that we are not here dealing with a contractual right to indemnification for civil penalties.

**554**

reasonable attorney's fees and costs. *See* 6 Marilyn Minzer et al., *Damages in Tort Actions* § 50.02, at 50–8 (1994). We cannot find any support, and none has been provided, for the proposition that punitive damages are available to one seeking indemnification. Because the purpose of indemnification is merely to reimburse one who has paid damages to an injured party, we hold that an award of indemnification does not support an award for punitive damages.

*Conclusion.* Because a factual issue exists whether Amrep's conduct was active or passive, the trial court erroneously dismissed Amrep's traditional indemnification claim. Further, the economic-loss rule does not bar Amrep's claim for indemnification. Finally, Amrep may pursue a claim of proportional indemnification for compensation and costs based on any damages incurred by and paid to the homeowners on contract claims but may not pursue a punitive damages award. Thus the judgment of the trial court is reversed and this matter is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

FRANCHINI and FROST, JJ., concur.