686 P.2d 262

John **GOUVEIA** and Nyla Gouveia, Plaintiffs-Appellants,

v.

**CITICORP PERSON–TO–PERSON FINANCIAL CENTER, INC.;** Beach Realty, Inc.; Weagley Agency, Inc.; Magdalena Graham and Jeff Weagley, Defendants-Appellees,

v.

Robert **STEUBER**, individually, and Robert Steuber, d/b/a Reliable Sales and Construction Company, Third-Party Defendants-Appellees.

No. 7572.

Court of Appeals of New Mexico.

July 17, 1984.

Robert J. Perovich, Howard R. Thomas, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for plaintiffs-appellants.

Raymond A. Baehr, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellees Weagley Agency, Inc., Jeff Weagley.

## OPINION

MINZNER, Judge.

This case presents issues concerning the extent of a listing real estate broker's liability to purchasers for representations made in connection with the sale of a townhouse. Plaintiffs ("Gouveias") brought an action against several defendants for rescission of their contract to purchase a townhouse in Rio Rancho, New Mexico, or, alternatively, for damages suffered because of an alleged misrepresentation. Among the named defendants were Weagley Agency, Inc., the listing broker for the property, and Jeff Weagley, the broker acting on the Agency's behalf (collectively, "Weagley"). The trial court granted a Motion for Summary Judgment as to these defendants, and the Gouveias appeal. We reverse.

The appeal raises two issues. First, because the Gouveias did not have any direct contact with Weagley, and did not discover most of the defects at issue, until several months after they entered into the Assumption Purchase Agreement (the "Agreement") and they were residing in the house, Weagley has argued that it owed them no duty. Thus, the appeal rais-

es the issue of whether Weagley's status entitles it to summary judgment as a matter of law. Second, the appeal raises the issue of whether, assuming Weagley owed the Gouveias a duty, there was any genuine issue of material fact with regard to breach of duty by Weagley.

FACTS

The Gouveias came to Albuquerque from Michigan in October or November 1982 to locate a house. Magdalena Graham, a real estate broker, on November 2, 1982, took them to the townhouse which they ultimately purchased.

Ms. Graham initially showed the property to Ms. Gouveia. Ms. Graham, Ms. Gouveia, and Mr. Gouveia subsequently conducted an inspection of the house. The Gouveias made an offer to the seller, Citicorp Person-to-Person Financial Center, Inc. ("Citicorp"), with Ms. Graham's assistance, later the same evening. After negotiation, Citicorp accepted a subsequent offer by the Gouveias. Citicorp and the Gouveias signed the Agreement on or about November 5, 1982. In accordance with the Agreement, the seller furnished the Gouveias an inspection report.

Subsequent to the Gouveias' joint inspection of the townhouse and prior to purchase, Mr. Gouveia asked Ms. Graham for a copy of the computer listing sheet on the property. This was a listing and description prepared by Weagley on behalf of Citicorp. The computer listing sheet described the townhouse as being in "All Top Shape."

The Gouveias argue that the townhouse was "replete with major defects." Their complaint primarily concerns a 47' × 18' addition to the original structure, which the computer listing sheet represented to be a living room. The Gouveias do not complain of this designation. In fact, Mr. Gouveia testified during his deposition that he realized after the initial inspection that the room was actually a recreation room. The Gouveias allege, and we assume for purposes of reviewing the grant of summary judgment, that the recreation room lacked a foundation, was not heated or could not be heated as represented, had a structurally deficient roof and ceiling, that the wiring and construction of the room did not conform to New Mexico building code requirements, and that a "hot tub/spa" in the room was unusable. The Gouveias claim that the various defects were not readily apparent to them upon reasonable inspection; that Weagley, because it knew or should have known of the defects, misrepresented the condition of the house by describing it as in "All Top Shape"; and that they relied upon the "All Top Shape" representation in purchasing the townhouse.

The Gouveias moved out of the townhouse in April 1983. According to Mr. Gouveia, they moved from the house because "significant portions" of the house were "unusable."

ASSERTED CLAIMS FOR FRAUD OR MISREPRESENTATION: DUTY OF A LISTING BROKER.

Weagley admits that it was the listing broker for the property, and does not deny that it prepared the property description contained in the multiple listing service. Weagley contends that because there was no direct contact with the Gouveias until after they purchased the house, it was not their fiduciary or agent and that New Mexico law imposed no duty to discover or to disclose the defects of which they complain. We disagree. Our case law recognizes sources of duty which preclude summary judgment as a matter of law on the basis of Weagley's status and the nature of the defects.

■ A listing broker preparing a property description for a multiple listing service knows, or should know, that that description will be relied upon, both by other brokers and by prospective buyers. *See generally Oates v. Eastern Bergen County Multiple Listing Service, Inc.*, 113 N.J. Super. 371, 273 A.2d 795 (1971). *Cf. Wilson v. Albuquerque Board of Realtors*, 82 N.M. 717, 487 P.2d 145 (Ct.App.1971) (declining to consider, for lack of a factual record, a broker's claim for damages arising out of defendant's maintenance of a

multiple listing service). Listing brokers assume a duty to all those who subsequently rely on their characterizations of property by virtue of making those representations. *First Church of the Open Bible v. Cline J. Dunton Realty, Inc.*, 19 Wash. App. 275, 574 P.2d 1211 (1978). Thus, a listing broker is potentially liable for actual or negligent misrepresentation.

■ We have recognized a cause of action for negligent misrepresentation against a broker if the broker fails to exercise reasonable care or competence in obtaining or communicating information. *Amato v. Rathbun Realty, Inc.*, 98 N.M. 231, 647 P.2d 433 (Ct.App.1982). Thus, if a broker exercising reasonable care should have had, or could have gained, actual knowledge of defects in property, it may be held liable for negligent failure to discover and disclose those defects. *Id.* We have applied these duties based on the broker's status as a fiduciary. *Id.*

■ There is no requirement that there have been direct contact between Weagley and the Gouveias in order that these duties be imposed. *Stotlar v. Hester*, 92 N.M. 26, 582 P.2d 403 (Ct.App.1978). *See also Maxey v. Quintana*, 84 N.M. 38, 499 P.2d 356 (Ct.App.1972). The source of liability lies in tort for negligent misrepresentation. The tort of negligent misrepresentation is described in the *Restatement (Second) of Torts* § 552 (1977). Under the *Restatement* formulation,

> it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar per-

son, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given.

Comment h, at 132–33. In this case, it is undisputed that Weagley supplied the listing to Ms. Graham, who supplied it to the Gouveias. Weagley supplied information to Ms. Graham for repetition to the Gouveias because they were prospective purchasers who utilized her services.

■ We see no reason to exclude a listing broker from the standard of care enunciated by the *Restatement* and applied in *Amato*. Under that standard, a listing broker is liable if it fails to exercise reasonable care or competence in obtaining or communicating information to persons within the scope of the duty owed. The particular care and competence required by one who gives information in the course of his or her business dealings will vary. *See Amato v. Rathbun Realty, Inc.* Under some circumstances, a broker may have a duty to disclose defects that an inspection would reveal. *See Easton v. Strassburger*, 152 Cal.App.3d 90, 199 Cal.Rptr. 383 (1984).

■ Further, a listing broker may be liable for fraud. A misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act upon it, and upon which the other party relies to his detriment, is fraud. *Poorbaugh v. Mullen*, 96 N.M. 598, 633 P.2d 706 (Ct.App.1981). Failure to disclose facts can be a misrepresentation in certain circumstances. For example, we have held a broker's failure to disclose defects of which it had actual knowledge was a breach of its duty as a fiduciary. *Neff v. Bud Lewis Co.*, 89 N.M. 145, 548 P.2d 107 (Ct.App.1976). We have also held that a seller's failure to disclose known defects gives the buyer a right to rescind the contract or receive damages. *Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94

(1970). The broker representing the seller has a duty to disclose defects, of which the broker has actual knowledge, that the seller would be required to disclose. *See Lingsch v. Savage*, 213 Cal.App.2d 729, 29 Cal.Rptr. 201 (1963). Misrepresentations made indirectly to an injured party can serve as the basis for an action for fraud as well as an action for negligent misrepresentation. *Massei v. Lettunich*, 248 Cal. App.2d 68, 56 Cal.Rptr. 232 (1967). *See also Restatement (Second) of Torts* § 531 (1977).

For these reasons, we conclude that status as a listing broker did not relieve Weagley of its legal obligations to prospective purchasers with respect to known or discoverable defects. The grant of summary judgment as a matter of law was erroneous, notwithstanding the absence of direct contact between Weagley and the Gouveias prior to the sale. We refer to the foregoing analysis in considering further the propriety of summary judgment.

## ASSERTED CLAIMS FOR FRAUD OR MISREPRESENTATION: ISSUES OF MATERIAL FACT.

Weagley, as the party moving for summary judgment, had the burden of making a prima facie showing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Amato v. Rathbun Realty, Inc.; Stotlar v. Hester.* Based on the record as of the date summary judgment was entered, and excluding the deposition taken after that date, we hold that Weagley has not yet made such a showing.

Weagley relied at the hearing on the motion for summary judgment and on appeal on the fact that the Gouveias admitted in deposition testimony they had no knowledge of any facts that would indicate Weagley had actual knowledge of the defects prior to purchase. Weagley did not submit any affidavit in support of the motion for summary judgment. There is no averment under oath in the record by any Weagley agent or representative that We-

agley had no actual knowledge of the defects prior to purchase or at the time the property description was drafted. Weagley has not made a prima facie showing of lack of actual knowledge. *Cf. Amato v. Rathbun Realty, Inc.* (in which the court sustained the grant of summary judgment on the issue of actual knowledge).

Absent a prima facie showing by Weagley that it had no actual knowledge of the defects, the grant of summary judgment was premature. Weagley cannot rely on the Gouveias' lack of knowledge to satisfy its affirmative requirement to make a prima facie showing. Until Weagley makes a prima facie showing that it had no actual knowledge, the Gouveias are not required to introduce facts in rebuttal. *See Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

Weagley also failed to meet its burden with respect to the allegation of negligent misrepresentation. The Gouveias alleged that the defects in the townhouse were not readily apparent to them on reasonable inspection. Weagley assumes that this allegation conclusively establishes that the defects were latent, and cites our language from *Amato* that a broker is not responsible for communicating knowledge of such defects.

There are several problems with this theory. First, the allegation merely avers that the defects were not readily discoverable by the Gouveias. This does not conclusively establish that the defects were latent or not easily discoverable as to Weagley. If Weagley had actual knowledge of the defects, they were not latent as far as Weagley was concerned.

Moreover, even if Weagley had no actual knowledge of the defects, our holding in *Amato* required Weagley to make a prima facie showing that it did not breach the standard of care of brokers in the community as to the charge of negligent failure to know of or discover the defects. As Judge Hendley wrote in *Amato*, "Without an affidavit or other testimony of a qualified expert stating that Ms. Rathbun [the

broker] did not breach the standard of care of brokers in the community, no prima facie showing was made." 98 N.M. at 233, 647 P.2d at 435. Having tendered no evidence to the trial court on this issue, Weagley was not entitled to summary judgment.

Weagley contends that it was entitled to summary judgment in any event because "Plaintiffs admit by sworn deposition testimony they did not rely on the realtor-type statements made * * *." This is not an accurate reflection of the record.

▮▮▮▮ It is true that Ms. Gouveia admitted in her deposition testimony that realtors typically use vague modifiers in phrases such as "it's a super buy," and "it's in top shape" when trying to sell a property. However, when asked if she put a lot of reliance on those statements, she replied, "Not too much." This cannot be taken as factually establishing no reliance, particularly where both the Gouveias at other points in their deposition testimony indicate reliance on the listing description. There is, at best, an issue of material fact as to the Gouveias' reliance on the "All Top Shape" representation on the record which precludes the grant of summary judgment. We cannot say, on the record before us, that no reasonable purchaser would rely on such a representation under these facts. Where the evidence permits conflicting inferences, summary judgment is not appropriate. *Yeary v. Aztec Discounts, Inc.*, 83 N.M. 319, 491 P.2d 536 (Ct.App.1971).

Further, as we understand the Gouveias' complaint, their claim of misrepresentation does not depend solely on the phrase "All Top Shape." The Gouveias claim that Weagley affirmatively misrepresented the condition of the townhouse and negatively misrepresented the condition by failing to disclose facts Weagley knew or should have known. Whether the listing misrepresented the condition of the townhouse depends upon the contents of the document in light of the facts the broker knew or should have known.

▮▮▮▮ Weagley finally argues that the Gouveias could not have relied on the list-ing description because "Plaintiffs admit they did not rely upon any 'representations' made by Defendants but upon the inspection made by Consumer Protection." It is true that the Gouveias received and relied on a "Consumer Protection Report." This does not, however, preclude the Gouveias from also relying on representations made by Weagley. The fact that the Gouveias may have relied on an additional inspection report cannot shield Weagley from liability for known or negligent misrepresentation. There is at least an issue of fact with respect to the respective capabilities of the broker and the buyer. *See Bell v. Kyle*, 27 N.M. 9, 192 P. 512 (1920); *Sauter v. St. Michael's College*, 70 N.M. 380, 374 P.2d 134 (1962). Finally, although the Agreement includes an "as is" clause, that would not relieve Weagley as a matter of law from liability for fraud. *Lingsch v. Savage. Cf. Archuleta v. Kopp*, 90 N.M. 273, 562 P.2d 834 (Ct.App.1977).

## CONCLUSION

Because Weagley had a duty to prospective buyers, and because genuine issues of material fact exist as to whether Weagley breached its duty, the district court's order granting summary judgment is reversed and the cause is remanded to the district court for proceedings consistent with this opinion.

IT IS SO ORDERED.

WOOD and NEAL, JJ., concur.