The majority concludes that the trial court should not have submitted the Bakers' case to the jury, because the Bakers had signed a purchase contract containing an "as is" clause. The majority opinion does not distinguish between the Bakers' negligence claim and their fraudulent inducement claim, but holds that both claims are foreclosed by the presence of an "as is" clause in the purchase contract. The majority relies onMassey v. Weeks Realty Co., Inc., 511 So.2d 171, 173 (Ala. 1987), as authority for its conclusion.
In Massey we indicated that a purchaser of used residential real estate who signs an "as is" purchase contract is barred from bringing a fraud action against his realtor. Massey was the first Alabama case addressing the effect of an "as is" clause on a purchaser's fraudulent inducement claim. The plaintiff in Massey brought a fraud action against a realty company and one of its employees, alleging that the employee induced him to purchase a home by falsely representing that the home was free from termite damage. The trial court entered a summary judgment for the defendants, and Massey appealed. This Court affirmed the summary judgment. We indicated that Massey presented no evidence to support a fraud action; specifically, Massey never asked the realtor whether the house had been checked or treated for termites, and the realtor never said that the house had been checked or treated for termites. However, instead of stating that Massey did not present enough evidence of fraud to survive a summary judgment motion, we asserted that, even if Massey could prove fraudulent inducement, he could not bring such an action against the realty company, or its employee, because he had signed an "as is" purchase contract. We relied on Ray v. Montgomery,399 So.2d 230 (Ala. 1980), as authority for this assertion. However, a careful analysis of Ray reveals that it does not support our assertion in Massey.
Like Massey, Ray purchased used residential real estate and signed an "as is" purchase contract. Thereafter, Ray discovered termite damage and sued his vendor, because, Ray said, the vendor had falsely represented that "the house was solidly supported." Unlike Massey, who alleged only fraudulent inducement, Ray argued that his vendor was liable for fraudulent inducement, fraudulent failure to disclose defects in the property, breach of duty to disclose defects, and breach of contract. This Court held that the vendor's statement regarding the house would not support a fraudulent inducement action, because, the Court said, it constituted an opinion, not a fact, and, therefore, was insufficient as a matter of law to support a claim that the vendor had procured the purchase contract by fraud. The Court also held, in Ray, that the vendor could not be liable for breaching a duty to disclose a defect in the property, because, it said, under the holding in DruidHomes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961), the rule of caveat emptor barred such an action when the property purchased was used residential real estate. Further, the Court said, the vendor was protected from liability for *Page 1276 
breach of a duty to disclose a defect by the presence of an "as is" clause in the purchase contract.
Because the discussion in Ray regarding the protective effect of "as is" clauses pertained only to the issue of a vendor's liability for breach of a duty to disclose defects, Ray did not provide authority for the position in Massey that an "as is" clause in the purchase contract protects a vendor from liability for fraudulent inducement. Additionally, the weight of the authorities that have addressed the effect of an "as is" purchase contract on fraud actions is contrary to Massey.
According to 37 Am.Jur.2d, Fraud and Deceit § 388 (1968),
 "It is fairly well established that an affirmative provision of an agreement that property is taken 'as is' . . . does not preclude [the purchaser] from establishing fraud in respect to false representations made by the representor disposing of such property, in reliance on which representations the transaction is actually consummated. This rule applies to real property sold on an 'as is' basis."
Virtually every other state that has addressed the effect of an "as is" provision in a contract for the purchase of used residential real estate has held that the "as is" provision does not insulate a vendor from liability for fraud.Crawford v. Nastos, 6 Cal.Rptr. 425, 431-32, 182 Cal.App.2d 659,668-69 (1960); Raynor v. Wise Realty Co., 504 So.2d 1361,1365 (Fla.Dist.Ct.App. 1987); Indiana Bank Trust Co. v.Perry, 467 N.E.2d 428, 432 (Ind.App. 1984); Herbert v.Saffell, 877 F.2d 267, 270 (4th Cir. 1989); Conahan v. Fisher,186 Mich. App. 48, 49, 463 N.W.2d 118, 119 (1990); Wagner v.Cutler, 232 Mont. 332, 336, 757 P.2d 779, 782 (1988); Wolfordv. Freeman, 150 Neb. 537, 545-46, 35 N.W.2d 98, 103 (1948);Dygert v. Leonard, 138 A.D.2d 793, 794, 525 N.Y.S.2d 436, 438
(1988); Chopp v. Welbourne Purdy Agency, Inc., 135 A.D.2d 958,958, 522 N.Y.S.2d 367, 368 (1987); Caramante v. Barton,114 A.D.2d 680, 681, 494 N.Y.S.2d 498, 500 (1985); Massler v.Smit, 279 A.D. 941, 942, 111 N.Y.S.2d 264, appeal dismissed,304 N.Y. 719, 107 N.E.2d 659 (1952); Gouveia v. CiticorpPerson-to-Person Financial Center, Inc., 101 N.M. 572, 578,686 P.2d 262, 268 (N.M.App. 1984); Mancini v. Gorick, 41 Ohio App.3d 373,373, 536 N.E.2d 8, 9 (1987); Kaye v. Buehrle,8 Ohio App.3d 381, 383, 457 N.E.2d 373, 376 (1983); MacFarlane v.Manly, 274 S.C. 392, 39596, 264 S.E.2d 838, 840 (1980); Silvav. Stevens, 156 Vt. 94, 112-13, 589 A.2d 852, 862-63 (1991);Stemple v. Dobson, 184 W. Va. 317, 322, 400 S.E.2d 561, 566
(1990); see also Annot., Construction and Effect of AffirmativeProvision in Contract of Sale by Which Purchaser Agrees to TakeArticle "As Is," in the Condition in Which It Is, or EquivalentTerm, 24 A.L.R.3d 465 § 7(b) (1969); Annot., Construction andEffect of Provision in Contract for Sale of Realty by WhichPurchaser Agrees to Take Property "As Is" or in the Conditionin Which It Is, 97 A.L.R.2d 849 (1964).
On the basis of this authority, I respectfully dissent from the majority's opinion. I would abandon the position that this Court adopted in Massey, because it distorts the law of this state and permits a vendor to contract away liability for intentional wrongdoing. Instead, I would adopt the position that an "as is" purchase contract does not shield a vendor from liability for fraudulent inducement. Accordingly, I would hold in this case that the trial court did not err in submitting the Bakers' fraudulent inducement claim to the jury, even though it should have directed a verdict for Ozark Realty on the Bakers' negligence claim because of the "as is" clause in the purchase contract.
In determining whether to affirm the Bakers' jury verdict, I must review the evidence tending to show fraudulent inducement in a light most favorable to the Bakers and indulge such reasonable inferences of fraudulent inducement as the jury was free to draw from the evidence. Unless the evidence against the verdict is so much more credible and convincing than the evidence supporting the verdict, so as to clearly indicate that the jury's verdict was wrong and unjust, the verdict is due to be upheld. Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987). *Page 1277 
At trial, the Bakers offered evidence that they intentionally inquired about structural problems with the house because they had heard that several houses in the neighborhood suffered from such problems. Specifically, Mr. Baker testified that, after he and his wife had looked at the house the first time, he asked Mary Woods, his real estate agent and an employee of Ozark Realty, "if there [were] any problems" with the house or "any conditions that [they] should be aware of and she said no." Mr. Baker further testified that later, approximately a week before they closed the loan on the house, Laura Baker learned from a friend who lived in the neighborhood "that there were problems in that area . . . with foundations cracking." He said, Mrs. Baker then telephoned him to tell him about the problems. He testified that, as a result:
 "I called Mary Woods and I told her about the conversation with Laura and [that] I was concerned that if there [were] any problems at all with the house that we were interested in that we needed to know. She said that there [were] not and that she would check with the listing agent Barbara [Scott]. She apparently called Barbara and then she called me back and said that Barbara said there [weren't] any problems with it."
Mrs. Woods testified that she responded to Mr. Baker's concerns about structural damage to the house by calling Barbara Scott, another agent and employee of Ozark Realty, who represented the couple selling the house, the Hovaters. Woods stated: "[Scott] said she didn't know of any [problems] and that she would call Mr. Hovater and call me back. She did that and Mr. Hovater said there [were] none that he knew of except for the one where the air conditioner went into the house." However, Mr. Hovater's testimony at trial contradicted Woods's. He stated that no one from Ozark Realty ever asked him about structural problems with the house. In addition, Woods testified that Ozark Realty had a file containing information about the house the Bakers purchased, because it had handled an earlier closing on this home. Woods said, however, that she was unaware that the file existed when she was responding to the Bakers' inquiries. This file included a 1984 VA statement that indicated possible structural problems with the house.
From this testimony a jury could find that Ozark Realty, when specifically asked about structural problems with the house, intentionally misrepresented its condition. The record also revealed sufficient evidence as to the remaining elements of fraudulent inducement, so that a jury could find that the Bakers proved their fraud claim. Accordingly, I would affirm the judgment based on the Bakers' jury verdict.
INGRAM, J., concurs.