895 P.2d 243

**John OTERO, Plaintiff–Appellee,**

v.

**JORDON RESTAURANT ENTERPRISES, a New Mexico Corporation, Defendant–Appellant.**

No. 15232.

Court of Appeals of New Mexico.

March 22, 1995.

Certiorari Denied May 10, 1995.

Wycliffe V. Butler, Butler & Butler, P.A., Albuquerque, for plaintiff-appellee.

Donald C. Schutte, Schutte & Trafton, P.C., Albuquerque, for defendant-appellant.

## OPINION

APODACA, Chief Judge.

This premises liability case involves the issue of an owner's liability for negligent acts committed by an independent contractor resulting in harm after completion of the work. Defendant Jordon Restaurant Enterprises (Defendant) appeals two rulings of the trial court: (1) a pre-trial grant of partial summary judgment to Plaintiff John Otero (Plaintiff), and (2) the court's refusal to give certain comparative negligence instructions to the jury. Because we determine there was no error under either issue, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant hired an independent contractor to expand the premises of its restaurant and bar. As part of the expansion project, the contractor assembled metal bleachers where patrons of the restaurant and bar could be seated to view a large-screen television. Approximately four months after the bleachers were installed, they collapsed. Plaintiff, a patron, fell and was injured. As a result of the accident, he filed suit against Defendant.

Defendant conceded in the trial court that the cause of the collapse was the contractor's faulty and negligent assembly of the bleachers. Defendant then filed a third-party complaint against the independent contractor and against the manufacturer and distributor of the bleachers. Defendant's claims against these third-party defendants are not part of this appeal.

Before trial, Plaintiff filed a motion for partial summary judgment, seeking an adjudication that Defendant was vicariously liable, or jointly and severally liable, for the contractor's negligence in assembling the bleachers. The trial court granted Plaintiff's motion, ruling that, as a matter of law, Defendant was liable for the contractor's negligence and that Defendant had a nondelegable duty to maintain safety in areas over which it had control. The trial court based its ruling on this Court's decision in *Broome v. Byrd*, 113 N.M. 38, 822 P.2d 677 (Ct.App. 1991).

At trial, Defendant requested jury instructions that would have allowed the jury to compare the contractor's negligence with the alleged negligence of the City of Albuquerque (the City), which issued the construction permit for the expansion work, and the alleged negligence of the architect who drew up the plans for the project. The trial court refused those instructions. The jury returned a verdict in favor of Plaintiff for $47,000 and against Defendant and the contractor, jointly and severally.

## II. DISCUSSION

### A. Adoption of Restatement Section 422(b)

In *Broome*, this Court adopted Restatement (Second) of Torts Section 422(a) (1965) (the Restatement). There, an employee of a tenant in a commercial building tripped and fell over a drop cloth. The drop cloth had been left outside the door of the tenant's business by an employee of the independent contractor painter hired by the building owner. *Broome*, 113 N.M. at 39, 822 P.2d at 678. The employee sued the building owner for negligence, and the trial court entered summary judgment for the building owner. *Id.* This Court reversed, holding that an owner of a commercial building can be held vicariously liable for an independent contractor's negligence where the negligence created a dangerous condition causing injury to a business visitor in those areas of the building over which the owner retained control. *Id.* at 41, 822 P.2d at 680. Generally, an employer is not vicariously liable for the negligence of an independent contractor, but this general rule of nonliability has numerous exceptions. *Id.* at 39, 822 P.2d at 681.

■ Although *Broome* is somewhat factually similar to the facts in this appeal, it is not exactly on point. *Broome* differs because there, the injury occurred while the construction project was in progress and resulted from alleged negligence in keeping the construction area safe. In this case, on the other hand, the injury occurred after the project was completed and resulted from independent contractor's defective performance of the work that left the structure in an unsafe condition. Under such circumstances, we conclude that the owner of the premises is liable to the same extent as if the owner had himself defectively performed the work. In so holding, we adopt Section 422(b) of the Restatement.

Section 422, in imposing liability on the owner of premises, states that an owner:

who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

. . . .

(b) after he has resumed possession of the land upon its completion.

Thus, Section 422(b) "makes it impossible for a possessor of land to escape liability for the non-performance of his duty to maintain his land in safe condition, so long as he is in possession of it, by delegating the task of doing the work necessary to the performance of that duty to an independent contractor." Restatement § 422 cmt. e. Liability is imposed on the owner of the premises despite the fact that the owner was not personally at fault in creating the unsafe condition.

We realize that in cases like *Broome*, where the owner has retained possession of the premises during the work, the owner is in the position to prevent injuries because the owner or its agents are present while the independent contractor's work is ongoing and should be aware of any dangerous condition that develops. Such may or may not be the case in situations where the work has already been completed. Nevertheless, the policy reasons for imposing liability on the owner articulated in *Broome* apply with equal force to cases such as this appeal, a case involving a latent defect. When adopting Section 422(a) in *Broome*, this Court reasoned that the owner obtains the benefit of the contractor's work and that an owner can insure against risks and incorporate those expenses into its overhead if the premises are business premises. *Broome*, 113 N.M. at 41, 822 P.2d at 680. We also recognized that the owner is in a position to prevent or minimize risks by

hiring a financially responsible contractor, by making arrangements for indemnification from the contractor, and by requiring the contractor to follow safety procedures and remedy dangerous conditions. *Id.; see Ft. Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962, 970–71 (1990) (en banc) (discussing policy rationales behind Section 422(b)); *Patton v. Spa Lady, Inc.,* 772 P.2d 1082, 1084 (Alaska 1989) (same). We consider these policy reasons equally applicable here.

We note that other jurisdictions have also held that "a possessor of land is accountable for the negligent failure of an independent contractor to put or maintain buildings or structures in … reasonably safe condition." *Kelly,* 800 P.2d at 970 (citing cases); *but see Mai Kai, Inc. v. Colucci,* 205 So.2d 291, 293 (Fla.1967) (holding that a landowner is not absolutely liable for an independent contractor's negligence and that he or she has only the duty to exercise reasonable care to prevent or correct an unsafe condition).

In adopting Section 422(b) of the Restatement, we necessarily reject Defendant's argument that an owner's liability should be limited to situations in which the owner himself is at fault.

### B. Collateral Negligence

Defendant additionally argues that, despite Section 422(b), it should not be held liable for the contractor's negligence because such negligence was only "collateral negligence." *See Broome,* 113 N.M. at 41–43, 822 P.2d at 680–82 (discussing concept of collateral negligence). We disagree with Defendant's contention.

The collateral negligence doctrine is an exception to an exception. That is, the general rule is that an employer is not liable for the negligence of an independent contractor. *Broome,* 113 N.M. at 39, 822 P.2d at 678. This rule, however, as we have previously noted, is riddled with exceptions, one of which is the one established in this case— that an owner of property is liable for the negligence of an independent contractor in building or making repairs to structures on that property, once the owner resumes possession. In turn, those exceptions are also

subject to an exception—that the owner is not liable for collateral negligence of the contractor or the contractor's employees. *See* Restatement § 422 cmt. e; Restatement § 426. We must therefore determine the meaning of the term "collateral negligence."

■ The concept of "collateral negligence" is set out in Section 426 of the Restatement. Section 426 states:

[A]n employer of an independent contractor, unless he is himself negligent, is not liable for physical harm caused by any negligence of the contractor if

(a) the contractor's negligence consists solely in the improper manner in which he does the work, and

(b) it creates a risk of such harm which is not inherent in or normal to the work, and

(c) the employer had no reason to contemplate the contractor's negligence when the contract was made.

Defendant interprets the collateral negligence concept broadly, arguing that a question of fact exists as to whether the contractor's failure to assemble the bleachers correctly was unusual negligence that could not be anticipated. We agree with Defendant that the question of whether negligence is collateral is often not easy to answer and is usually an issue of fact. *See Broome,* 113 N.M. at 42, 822 P.2d at 681. In this case, however, the question can be answered as a matter of law.

■ Cases and commentators discussing the collateral negligence doctrine make clear that the concept is limited to negligence that produces a temporarily unsafe condition while the work is in progress. Negligence that produces a poor result or a defect in the final structure, however, is not considered collateral negligence. *See Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508, 512–13 (1968) (en banc) (citing *Snyder v. Southern Cal. Edison Co.,* 44 Cal.2d 793, 285 P.2d 912, 915 (1955)); *Saiz v. Belen Sch. Dist.,* 113 N.M. 387, 397, 827 P.2d 102, 112 (1992); Restatement § 422, at 408, cmt. e (for an owner to be liable for a contractor's negligence, the negligence must result in a failure to put and maintain the land in that

safe condition in which it is the duty of the owner to put and maintain it; the owner is not liable for any casual act of negligence in the operative detail of doing the work that, however injurious to another, *does not prevent the land from being put or maintained in safe condition;* such negligence is collateral negligence); Talbot Smith, *Collateral Negligence,* 25 Minn.L.Rev. 399 (1941) (discussing origins of collateral negligence theory and drawing distinction between negligence collateral to the accomplishment of a given result, and the result itself; where the fault lies in the final, completed structure the collateral negligence argument has been denied). Thus, a distinction exists between the negligent manner of ongoing work performed by the contractor, for which the employer of the independent contractor may not be liable under the collateral negligence doctrine, and the condition of the premises that results from the negligence, for which the collateral negligence doctrine does not apply.

Here, Defendant had a nondelegable duty to exercise reasonable care that the bleachers were in a safe condition. The contractor's negligent assembly, therefore, made the completed structure unsafe and affected the result that the owner was under a duty to attain—a result of reasonably safe premises. This was not a situation involving an unsafe condition created only while the work was ongoing. *See, e.g., Broome* (drop cloth left on floor during progress of work; question of collateral negligence raised issue of fact). We conclude, as a matter of law, that the negligence of the independent contractor was not collateral negligence, and therefore Defendant is liable for that negligence.

#### C. Comparative Negligence

■ Finally, Defendant contends that the architect was negligent in failing to provide specifications for the bleachers. Defendant wanted to have the architect's and the contractor's negligence compared, in order to reduce Defendant's liability. The trial court refused to allow the jury to consider the architect's negligence. We determine there was no error in the trial court's refusal. To the extent that the architect was negligent, that negligence, like the contractor's, allowed

the bleachers to be erected and to remain in an unsafe condition. As the record indicates, the architect was either an independent contractor retained by Defendant or an employee or subcontractor of an independent contractor. Therefore, under the same theory as that discussed in the previous sections of this opinion, Defendant was liable to Plaintiff for the architect's negligence, if any, that caused the bleachers to be unsafe. *See* Restatement § 422 cmt. d.

Defendant also argues that the City was negligent because it granted a permit for the renovations, including the bleachers, without ensuring that the contractor was properly licensed; the contractor was licensed to work on residential premises, but not on commercial premises. Defendant maintains that the City's negligence in issuing a permit to an improperly licensed contractor should be compared to the contractor's negligence, to reduce Defendant's ultimate liability. The trial court refused to instruct the jury concerning the City's comparative negligence.

■ We start with the premise that, except for a few exceptions, the liability of concurrent tortfeasors is several rather than joint and several—each tortfeasor pays only for its share of the damages in proportion to the comparative fault assigned by the factfinder. NMSA 1978, § 41–3A–1 (Repl. Pamp.1989). There are exceptions to this rule, however, including an exception for situations "having a sound basis in public policy." Section 41–3A–1(C). We believe that this case presents a situation in which sound public policy dictates that one of the tortfeasors, the independent contractor (and, through the contractor, Defendant in this appeal) should be liable for all of Plaintiff's damages. We therefore determine that Plaintiff was entitled to bring his claim only against Defendant, and to recover all of his damages directly from Defendant, rather than being forced to attempt to collect part of those damages from the City.

Our analysis is as follows: (1) Defendant is liable for the defective bleachers to the same extent as the independent contractor would be liable; (2) under the circumstances of this case, the independent contractor, and therefore Defendant, would be required to indem-

nify the City in the event the City were found to be liable at all to Plaintiff; (3) therefore, Plaintiff should not be required to bring an action against the City, if Plaintiff elects instead to proceed directly against Defendant for his damages.

Under Section 422(b) of the Restatement, Defendant is subject to the same liability for the collapsed bleachers as if Defendant had erected the bleachers itself, retaining the work in its own hands. This places Defendant in the same position as the independent contractor, as far as any liability for indemnification to the City.

The indemnification analysis is slightly more complicated. Our Supreme Court recently determined that New Mexico tort law retains traditional indemnity principles, even after the adoption of comparative negligence. *Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc.*, 119 N.M. 542, 893 P.2d 438 (1995). *Amrep* specifically recognized a distinction between active and passive negligence, holding that indemnification may be appropriate where one party has been merely passively negligent and the other party has been actively negligent. 893 P.2d at 442–443. The Supreme Court did note that an independent, preexisting legal relationship between indemnitor and indemnitee is sometimes necessary to support a claim for indemnification, but suggested that such a relationship is not necessary where there are exceptional circumstances. 893 P.2d at 442. These exceptional circumstances include cases in which there is a great difference in the degree of fault between concurrent tortfeasors or when the character of the duties owed by the tortfeasors to the plaintiff is vastly different or disproportionate. *Id.*, 893 P.2d at 441, n. 1. We believe that this case presents such exceptional circumstances.

As we previously noted, indemnity is often allowed where one tortfeasor's negligence is entirely passive, while the other's negligence is active. It is not always easy to determine whether negligence is active or passive, however. One example given by the Supreme Court in *Amrep* is that active negligence occurs when an individual creates a dangerous condition, and passive negligence occurs

when another individual fails to discover and remedy that dangerous condition. 893 P.2d at 443. In other words, the party failing to discover the condition is entitled to indemnification from the party that created the condition, because, as between the two parties, the far greater responsibility is that of the person creating the dangerous condition. *Id.*

In this appeal, the City's negligence, if any, was even more passive than a failure to discover the unsafe condition created by the independent contractor. The City did not inspect the bleachers after they were erected and was not in control of the premises or in a position to perform such an inspection. The City merely gave the contractor an opportunity to create the dangerous condition by issuing a construction permit to which the contractor was not entitled. The City did not even supply an instrumentality, equipment, or materials used in erecting the bleachers. In addition, there is no proof that the City had any information indicating the contractor had performed shoddy work in the past, which undeniably would have raised its degree of fault somewhat. Since the City's only fault lay in affording the contractor an opportunity to perform the work, and the City had no part in actually performing the work or in inspecting it afterward, we hold that the City's negligence in this case, if any, was entirely passive and minimal in degree compared to the negligence of the party that actually created the dangerous condition.

We therefore hold that the City would have been entitled to indemnification from the independent contractor, should the City have been held liable to Plaintiff for any of Plaintiff's damages. *Cf. id.; cf. also Przybylski v. Perkins & Will Architects, Inc.*, 95 Ill.App.3d 620, 51 Ill.Dec. 110, 113, 420 N.E.2d 524, 527 (1981) (passively negligent tortfeasor can obtain indemnity from actively negligent tortfeasor; if defendant is held liable merely because of its supervisory power on the job site, liability can be shifted to the more culpable party); *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936, 939 (Ky.1987) (where restaurant's negligence consisted solely in failing to prevent assault, restaurant was entitled to indemnity from assailant); *O'Malley v. Peerless Petroleum*, 283 Pa.Su-

per. 272, 423 A.2d 1251, 1262 (1980) (sewer authority that did not detect damaged gas pipe can obtain indemnification from petroleum company that damaged the gas pipe when sewer authority's liability to plaintiff was due to its failure to discover the defect). This would be true despite the lack of an independent, pre-existing legal relationship between the City and the contractor, because this case fits squarely within the exceptional circumstances exception to that requirement.

We emphasize that our holding on the indemnification question is not an expression of any view as to whether the City's immunity has been waived for a claim such as the one Plaintiff might have asserted. *Cf. Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 741 P.2d 1374 (1987) (analyzing issuance of permit to determine whether it might be actionable under the Tort Claims Act). This issue was not raised in this appeal and is unnecessary to our decision. We are also not holding that, in any situation in which, traditionally, indemnity has been granted, *Amrep* would require that indemnity now be afforded as well. The full parameters of *Amrep* and the pre-existing relationship requirement have yet to be explored. We are holding only that in cases such as this appeal, where one party's negligence is entirely passive and has nothing to do with the actual performance of the work or its aftermath, that party should, under *Amrep*, be entitled to indemnity from the party that created the dangerous condition.

Having resolved the indemnity question against Defendant, we also hold that there is no reason to require Plaintiff to proceed against both Defendant and the City, when Defendant is ultimately responsible for the entirety of Plaintiff's damages. *Cf. Leyba v. Whitley*, 118 N.M. 435, 445, 882 P.2d 26, 36 (Ct.App.) (procedure under which child would sue trustee, and trustee would then sue her attorneys for indemnity or contribution, would be unduly complicated), *cert. granted*, 118 N.M. 430, 882 P.2d 21 (1994).

For these reasons, we hold that sound public policy requires that Defendant be liable to Plaintiff for the entire amount of Plaintiff's damages. We therefore conclude it was not error for the trial court to refuse to allow the jury to compare the City's negligence with that of Defendant.

## III. CONCLUSION

We hold that, under Section 422(b) of Restatement, which we adopt as law in New Mexico, the contractor's negligence was not collateral negligence. We also hold that the trial court correctly refused Defendant's requested comparative negligence instructions. We therefore affirm the judgment entered against Defendant.

**IT IS SO ORDERED.**

HARTZ and FLORES, JJ., concur.