922 P.2d 569

John OTERO, Plaintiff–Respondent,

v.

**JORDAN RESTAURANT ENTERPRIS-ES, a New Mexico Corporation, Defendant–Petitioner.**

No. 22841.

Supreme Court of New Mexico.

July 25, 1996.

Wycliffe V. Butler, Butler & Butler, P.A., Albuquerque, for Respondent.

Donald C. Schutte, Schutte & Associates, P.C., Albuquerque, for Petitioner.

## OPINION

RANSOM, Justice.

1. John Otero sued Jordan Restaurant Enterprises for personal injuries he suffered in the collapse of metal bleachers on which he was seated. The bleachers had been assembled by Gary Marquart, doing business as Desert Hawk, Inc., an independent contractor hired by Jordan to make improvements to its restaurant and sports bar. Prior to trial the district court granted Otero's motion for partial summary judgment against Jordan on the issue of its liability for Marquart's negligence. At a trial on the issue of damages, Jordan requested instructions which would have allowed the jury to compare Jordan's fault with that of the project's architect, who failed to provide specifications for the bleachers, and the City of Albuquerque, which issued a building permit to Marquart even though he was not properly licensed to perform renovations on commercial premises. The district court refused these instructions, and the jury returned a verdict in favor of Otero for $47,000.

2. Jordan appealed to the Court of Appeals, arguing that the trial court erroneously entered summary judgment on the issue of Jordan's liability for Marquart's acts and that the court erred by not instructing the jury on comparative fault. The Court of Appeals adopted Restatement (Second) of Torts Section 422(b) (1965) and held that

Jordan had a nondelegable duty to maintain its business premises in a reasonably safe condition, which made Jordan liable to Otero to the same extent as Marquart and the architect. *Otero v. Jordon Restaurant Enters.*, 119 N.M. 721, 723, 895 P.2d 243, 245 (Ct.App.), *cert. denied*, 119 N.M. 617, 894 P.2d 394, *and cert. granted*, 119 N.M. 810, 896 P.2d 490 (1995).[1] Because Jordan would be liable for the negligence of the architect to the same extent as it would be liable for the negligence of Marquart, *see* Section 422 cmt. d, Jordan could not have its liability to Otero reduced in proportion with the fault of the architect. *Otero*, 119 N.M. at 725, 895 P.2d at 247.

3. The Court of Appeals also held that it was not error to refuse Jordan's tendered instructions on comparative fault of the City because, had the City been sued by Otero and found liable, it would be entitled to indemnification from Jordan for any damages awarded against it. *Id.* at 725–26, 895 P.2d at 247–48. We granted certiorari to consider whether the City arguably would have been entitled to such indemnification and any effect that would have on comparative fault. Questions regarding the adoption of Section 422(b) and Jordan's nondelegable duty are not before this Court. We hold that the City would not be entitled to indemnification from Jordan. Nevertheless, we affirm the trial court because, for purposes of determining liability to Otero, Jordan stands in the shoes of Marquart, and Marquart would not be entitled to an instruction on comparative fault.[2]

4. *Facts and Proceedings.* Jordan operates a restaurant in Albuquerque formerly known as Champion's Sports Bar and Grill and now known as Spectators. In July 1989 Jordan entered into a contract with Marquart for the construction of certain tenant improvements to the restaurant. Among

1. The Court of Appeals, consistent with the original complaint, styled this case "Otero v. Jordon Enterprises." The table of cases and tables of denials and grants of certiorari in volume 119 of New Mexico Reports refer to "Jordon," while the name at the head of each even-numbered page of the reported opinion is spelled "Jordan." In the petition for writ of certiorari Jordan styled this case "Otero v. Jordan Restaurant Enterprises"

and each of the briefs filed in this matter refer to "Jordan." Because this an original proceeding on certiorari we will use the spelling "Jordan."

2. As found by the trial court, Jordan would be entitled to indemnification from the contractor and architect for whose negligence Jordan is liable under Restatement (Second) of Torts Section 422(b).

these improvements was a set of metal bleachers to be used by patrons while watching sporting events on a big screen television in the sports bar. After the bleachers had been installed, employees of Jordan had been on the bleachers and observed no structural weaknesses. Approximately four months after the improvements were completed, the metal bleachers collapsed. Otero, who was then sitting at or near the top of the bleachers, fell and injured his back. Jordan conceded that the bleachers collapsed because they were negligently installed by Marquart. Testimony showed that the bleacher manufacturer's assembly instructions called for metal cross-bracing to be installed across the back of the bleachers in an "X" and that the metal supports were instead fastened in a vertical position.

5. During a jury trial on the issue of damages, Jordan presented evidence that, had the City investigated Marquart's permit application, it would have discovered that Marquart was licensed to conduct residential installations but not commercial installations such as the one contracted for by Jordan. Based on this evidence Jordan tendered an instruction that would have allowed the jury to compare Marquart's negligence and the City's negligence in issuing a permit to Marquart. The trial court refused this instruction.

6. The Court of Appeals held that the trial court did not err by refusing the tendered instruction, adopting the following chain of reasoning.[3] First, the Court reasoned, under our decision in *Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc. (In re Consolidated Vista Hills Retaining Wall Litigation)*, 119 N.M. 542, 893 P.2d 438 (1995), the City would be entitled to indemnification from Marquart for any damages awarded to Otero because the City's minimal negligence in issuing a permit to Marquart was passive while Marquart's dis-

proportionately greater degree of negligence in installing the bleachers was active. Second, based upon a nondelegable duty to maintain its premises in a safe condition, Jordan would be liable to the City for indemnification to the same extent as Marquart. Finally, because Jordan would bear ultimate responsibility for all damages awarded to Otero based upon the fault of the City, Otero should be permitted to proceed directly against Jordan without need to apportion fault to the City.

7. The Court of Appeals' conclusion that Marquart would have to indemnify the City is based upon its interpretation of *Amrep* to the effect that "[t]he Supreme Court did note that an independent, preexisting legal relationship between indemnitor and indemnitee is sometimes necessary to support a claim for indemnification, but suggested that such a relationship is not necessary where there are exceptional circumstances." *Otero*, 119 N.M. at 726, 895 P.2d at 248. Based on this interpretation of *Amrep*, the Court concluded that such exceptional circumstances exist here because "the City's negligence in this case, if any, was entirely passive and minimal in degree compared to the negligence of [Marquart]." *Id.* Under the facts of *Amrep*, however, it was not necessary for this Court to decide whether a claim for traditional indemnification would lie in the absence of an independent, preexisting relationship between indemnitor and indemnitee. As we observed, "an independent, preexisting legal relationship between Amrep and Shollenbarger is established by their respective positions in the chain of distribution of a product." *Amrep*, 119 N.M. at 546, 893 P.2d at 442.

■ 8. *Amrep does not give the City a right of indemnification against Jordan.* In cases which involve concurrent tortfeasors, such as this one, the general rule is that an action for traditional indemnification does not

---

3. The Court of Appeals declined to decide whether the City had waived any governmental immunity under the Tort Claims Act for negligence in the issuance of construction permits. *Otero*, 119 N.M. at 727, 895 P.2d at 249. We likewise find it unnecessary to decide this issue or whether, even if we assume that the City has not waived its immunity, such lack of waiver affects Jordan's right to attribute fault to the City under a comparative negligence theory. *See Wilson v. Probst*, 224 Kan. 459, 581 P.2d 380, 384 (1978) (holding that alleged negligence of state highway department had to be compared to alleged negligence of other defendants even though department was immune from liability).

lie in favor of either tortfeasor in the absence of some preexisting relationship between them that gives rise to an independent duty flowing from the putative indemnitor to the putative indemnitee. *See, e.g., Atkinson v. Berloni*, 23 Conn.App. 325, 580 A.2d 84, 85 (Conn.App.Ct.1990) (affirming dismissal of indemnification claim because no independent legal relationship existed between two motorists whose separate negligent acts had united to injure the driver and passenger of a motorcycle); *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 371 (1951) (holding that building supply company whose employee's negligence in avoiding automobile contributed to accident between two trucks could not recover indemnification from automobile driver). However, as we noted in *Amrep*, 119 N.M. at 545 n. 1, 893 P.2d at 441 n. 1, some courts have permitted an action for traditional indemnification when there is a great difference in the degree of fault between concurrent tortfeasors, *see, e.g., Missouri, K & T Ry. Co. v. Missouri Pac. Ry. Co.*, 103 Kan. 1, 175 P. 97, 104 (1918) (holding that employer of train engineer who was negligent could recover indemnification from employer of another engineer who was wanton and reckless), and some have permitted an action for indemnification when the character of the duties owed to the plaintiff by the tortfeasors is vastly different or disproportionate, *see, e.g., Burbage v. Boiler Eng'g & Supply Co.*, 433 Pa. 319, 249 A.2d 563, 567 (1969) (noting that right to indemnification arises from "difference in the *character* or *kind* of the wrongs which cause the injury," and holding that boiler manufacturer had indemnification claim against valve manufacturer (quoting *McCabe*, 77 A.2d at 370)).

9. After examining the origins and evolution of the action for traditional indemnification, we conclude that exceptions to the general rule are a byproduct of a system which prohibited contribution among jointly and severally liable tortfeasors.[4] The common law did not permit either pro rata or fault-based contribution among tortfeasors, *see Rio Grande Gas Co. v. Stahmann Farms, Inc.*, 80 N.M. 432, 434, 457 P.2d 364, 366 (1969), and courts early on realized that the bar against contribution often worked inequities. This led to the recognition of actions for indemnification which "provided for a *complete* shifting of liability from one party to another in cases where a party was held only vicariously liable." *Vertecs Corp. v. Reichhold Chems., Inc.*, 661 P.2d 619, 621 (Alaska 1983) (emphasis added). As the action was originally formulated, the one seeking indemnification had to be entirely free from fault. This too worked inequities under the facts of some cases, and thus courts began to engraft exceptions onto the no-fault indemnification action. *See generally Dole v. Dow Chem. Co.*, 282 N.E.2d 288, 292–95 (N.Y.1972) (discussing origins of distinction between active and passive tortfeasors and role played by common-law lack of contribution).

10. In New Mexico, as we noted in *Amrep*, 119 N.M. at 552, 893 P.2d at 448, "[t]o establish an equitable system in which in most cases a party is only liable to the extent that it was to blame for the damages to the victim, our Court of Appeals adopted in *Bartlett [ v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982),] the doctrine of several liability." Based on these same equitable considerations we adopted proportional indemnification as a means of equitably adjusting liability between concurrent tortfeasors in those cases in which a defendant is denied the ability to "raise the fault of a concurrent tortfeasor as a defense because of the plaintiff's choice of remedy." *Amrep*, 119 N.M. at 552, 893 P.2d at 448. We cautioned, however, that "[s]uch proportional indemnification applies only when contribution or some other form of proration of fault among tortfeasors is not available." *Id.* at 552–53, 893 P.2d at 448–49.

11. In this case Otero sued Marquart and Jordan in tort. Thus, plaintiff's theory of the case provides a ready mechanism by which to fairly apportion liability for

---

**4.** In New Mexico, with limited exceptions, joint and several liability has been abolished, NMSA 1978, § 41–3A–1 (Repl.Pamp.1989), and when joint and several liability does exist there is the right of contribution, NMSA 1978, § 41–3–2(A) (Repl.Pamp.1989).

damages among all those at fault under the doctrine of comparative negligence, and proportional indemnification would not be warranted. Further, because New Mexico tort law is premised on the notion that each concurrent tortfeasor should bear responsibility for an accident in accordance with his or her fault, we hold that in the absence of an independent, preexisting relationship the City would not be entitled to traditional indemnification if its negligence were a proximate cause of Otero's damages, regardless of whether one might say that as compared to Marquart or Jordan its negligence was "minimal." [5] *Cf. Dole,* 282 N.E.2d at 294–95 (holding that liability should be apportioned among joint tortfeasors according to relative fault).

■ 12. *Jordan's liability under Restatement Section 422(b).* By ruling that because the City could recover indemnification from Marquart it could also recover indemnification from Jordan, the Court of Appeals implicitly held that Jordan was an active tortfeasor. This holding follows from the reasoning that the City's indemnification rights against Marquart arise because its negligence, if any, was "passive and minimal in degree." Any suggestion that the liability of a landowner to a business invitee for an unsafe condition on the premises created by a contractor and not discovered by the landowner arises from the active negligence of the landowner is incorrect.

13. The rule stated in the Restatement of Restitution is that

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land[,] . . . which was created by the misconduct of the other[,] . . . he is entitled to restitution

from the other . . . unless after discovery of the danger, he acquiesced in the continuation of the condition.

Restatement of Restitution § 95 (1937). The Vermont Supreme Court applied this rule in *Bardwell Motor Inn, Inc. v. Accavallo,* 135 Vt. 571, 381 A.2d 1061, 1062 (1977), and held that a hotel owner could recover traditional indemnification from a contractor for damages the former had to pay to a hotel patron who was injured in a fall while attempting to open an exterior door of the hotel. The court reasoned that "[w]hile, as against the person injured, plaintiff here had a nondelegable duty to keep its premises reasonably safe, the violation of that duty was clearly the primary fault of the defendants." *Id.; see also Lipman Wolfe & Co. v. Teeples & Thatcher, Inc.,* 268 Or. 578, 522 P.2d 467, 471–72 (1974) (concluding that storekeeper held liable under Section 422(b) could recover indemnification from contractor whose negligence rendered premises unsafe).

14. This reasoning accords with the general rule that one held vicariously liable has an action for traditional indemnification against the person whose act or omission gave rise to the vicarious liability. *See, e.g., Amrep,* 119 N.M. at 546, 893 P.2d at 442 (noting that right of indemnification may arise from vicarious or derivative liability). Here, Jordan's liability to Otero arises by operation of law because of a policy-based decision that landowners should be held responsible for unsafe conditions on their premises whether or not they directly created them. It is not disputed that Marquart's negligence in failing to correctly assemble the bleachers caused Otero's damages. It is also undisputed that Jordan did not discover that the bleachers were unsafe. Under these circumstances, Jordan's liability does not arise from its active negligence, and it would

---

**5.** This is not to say that under no circumstance will one tortfeasor be entitled to indemnification from another in the absence of an independent, preexisting relationship. The successive-tortfeasor situation which will give rise to indemnification in favor of one tortfeasor against another without such a relationship is typified by *Lujan v. Healthsouth Rehabilitation Corp.,* 120 N.M. 422, 902 P.2d 1025 (1995). In that case a negligent automobile driver could have been held liable *by operation of law* for all of an accident victim's

damages—even those caused by a negligent treating physician. Because the driver's liability for the damages caused by negligent treatment is derivative of the physician's liability and arises only by operation of the doctrine of proximate cause, it is equitable that, as between the driver and the physician, the latter should bear complete responsibility for the damages attributable to the negligent treatment. Equities likewise exist here, as we discuss later, but not for the reasons adopted by the Court of Appeals.

not be liable to indemnify concurrent tortfeasors.

**15.** *The trial court nonetheless properly refused instructions on comparative fault.* While we would ordinarily remand this case for a determination by the factfinder whether the evidence adduced by Jordan demonstrated that the City had breached its duty to Otero, and, if so, using principles of comparative fault, a determination of the extent to which this breach contributed to Otero's injuries, *cf. Reichert v. Atler,* 117 N.M. 623, 626, 875 P.2d 379, 382 (1994) (holding that bar owner's failure to perform duty to keep premises safe for patrons should be compared with harmful conduct of third party), here it is important that Jordan, as the owner of unsafe premises, is vicariously responsible to Otero for the entire liability of the independent contractor, Marquart. The real issue, therefore, in determining whether the trial court properly refused Jordan's tendered instructions on comparative fault is whether Marquart should be allowed to reduce his liability to Otero by claiming that the City was negligent in issuing him a building permit. Of particular relevance in resolving this issue is Marquart's knowledge when he made application to the City that he did not have a license to perform non-residential installations.

**16.** A misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive the party to whom the representation was made and to induce that other party to act, is actionable fraud when the other party does act upon the misrepresentation to its detriment. *Sauter v. St. Michael's College,* 70 N.M. 380, 384–85, 374 P.2d 134, 138 (1962). Failure to disclose facts may be a misrepresentation under some circumstances. *See Gouveia v. Citicorp Person-to-Person Fin. Ctr., Inc.,* 101 N.M. 572, 576, 686 P.2d 262, 266 (1984). Here, Marquart not only failed to disclose that he did not have a contractor's license to perform the type of work proposed in his application, merely by filing the application he represented that he did have a valid license. *See* NMSA 1978, § 60–13–12(A) (Repl. Pamp.1989).

**17.** As we observed in *Reichert,* 117 N.M. at 625, 875 P.2d at 381, "[i]n New Mexico, comparative-fault principles apply unless such application would be inconsistent with public policy." One guilty of fraud cannot be allowed by operation of law to profit by that fraud. *See Sauter,* 70 N.M. at 388–389, 374 P.2d at 140 (holding that one guilty of fraud could not invoke doctrine of estoppel based upon that fraud). Therefore, Marquart, whose tacit representation that he had a license to perform commercial installations lay at the root of the City's alleged negligence, could not have been allowed to attribute blame for Otero's injuries to the City. *See, e.g., Tratchel v. Essex Group, Inc.,* 452 N.W.2d 171, 180–81 (Iowa 1990) (holding that instruction on comparative fault of plaintiff properly denied to defendant guilty of fraud); *Cruise v. Graham,* 622 So.2d 37, 40 (Fla.Dist. Ct.App.1993) (holding that denial of comparative fault instructions in fraud action not error); *cf. Neff v. Bud Lewis Co.,* 89 N.M. 145, 149, 548 P.2d 107, 111 (Ct.App.) (holding contributory negligence not a defense to claim for negligent misrepresentation by building owner against real estate broker and salesmen having fiduciary relationship to plaintiff), *cert. denied,* 89 N.M. 321, 551 P.2d 1368 (1976); *Estate of Braswell v. People's Credit Union,* 602 A.2d 510, 515 (R.I.1992) (holding comparative negligence principles inapplicable in action for negligent misrepresentation against credit union). Further, issues of sovereign immunity aside, had Otero sued the City, the City would have been entitled to indemnification from Marquart for any damages awarded to Otero against it because of Marquart's fraudulent permit application. *See Smith v. Herco, Inc.,* 900 S.W.2d 852, 863 (Tex.Ct.App.1995) (upholding indemnification in favor of one of two joint tortfeasors because one had committed fraud against the other).

18. *Conclusion.* The Court of Appeals correctly concluded that the City would be entitled to indemnification from Marquart for any damages the City was liable to pay Otero. The basis for this right of indemnification, however, is Marquart's fraudulent permit application, which also prevents him from attributing fault to the City under principles adopted in *Bartlett.* Jordan does stand in

the shoes of its independent contractor, Marquart, for purposes of determining liability to Otero; however, Jordan does not stand in Marquart's shoes for purposes of determining liability to the City for indemnification as the Court of Appeals concluded. Jordan has a landowner's duty that imposes vicarious liability to invitees injured by an unsafe condition on the premises. Jordan has no duty to the City. Any complaint the City (as a concurrent tortfeasor) might have for indemnification by reason of Marquart's fraud would be between the City and Marquart, not the City and Jordan. We therefore overrule the Court of Appeals' holding that Jordan would have been liable to the City for indemnification. We nevertheless affirm the trial court because comparative fault instructions were not appropriate under the facts of this case; as a matter of policy Marquart cannot reduce his liability to Otero based upon his fraudulent permit application, and as a matter of policy Jordan is vicariously responsible to Otero for Marquart's liability.

19.  **IT IS SO ORDERED.**

BACA, C.J., and MINZNER, J., concur.